UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| RANBAXY LABORATORIES INC.<br><br>　　Plaintiff<br><br>v.<br><br>FIRST DATABANK, INC.<br><br>　　Defendant. | CIVIL ACTION NO. 3:13-CV-859-J-32TEM |

COMPLAINT AND DEMAND FOR JURY TRIAL
INJUNCTIVE RELIEF SOUGHT

　　Plaintiff Ranbaxy Laboratories Inc. ("Ranbaxy") files this Complaint against Defendant First Databank, Inc. ("FDB"), and respectfully alleges as follows:

### Nature of this Case

　　1.　Ranbaxy brings this action to stop FDB (a provider of drug information to the pharmacy industry) from continuing to offer false, misleading and incomplete information about one of Ranbaxy's key branded drug products (Absorica™) and to recover the monetary damages suffered by Ranbaxy as a result of FDB's tortious conduct.

　　2.　FDB's wrongful conduct has not only cost Ranbaxy millions of dollars in lost sales, but poses a serious risk to those patients who are not receiving the medication prescribed by their treating physicians as a result of FDB's actions.

### The Parties

　　3.　Ranbaxy, a Delaware corporation with its principal place of business in Jacksonville, Florida, is part of a large integrated global pharmaceutical company serving customers in more than 125 countries. Among its various businesses, Ranbaxy sells and

distributes branded prescription pharmaceutical products in the United States healthcare system. Absorica™ is the flagship brand of the Ranbaxy dermatology product portfolio in the United States.

4. FDB, a Missouri corporation with its principal place of business in South San Francisco, California, is authorized to do business, and does business, in the State of Florida. FDB compiles, edits, and publishes electronic materials concerning prescription drug products that it sells to pharmacists, physicians, pharmacy-benefit managers, Medicaid and Medicare reimbursement entities, and others involved in the business of prescribing, dispensing and paying for prescription drug products (collectively, "FDB Subscribers"). FDB's publications include electronic databases and software modules purporting to accurately describe the clinical characteristics and pricing of various pharmaceutical products. FDB also provides consulting and other services relating to its products and asserts on its website under the heading "Collaboration" that "we go beyond the development and maintenance of drug knowledge to focus on building problem-solving partnerships" with FDB Subscribers.

### Jurisdiction and Venue

5. This Court has diversity subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Ranbaxy and FDB are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. This Court has personal jurisdiction over FDB, including because: (a) FDB is authorized to do business and maintains an agent for service of process in this State; (b) FDB conducts business within this State by engaging in extensive marketing activities, contracting with FDB Subscribers and providing services to FDB Subscribers in this State; (c) FDB derives substantial revenues from the business it conducts within this State; (d) FDB directed the false, misleading and incomplete statements described herein to FDB Subscribers located within this

State; and (e) as a consequence of FDB's false, misleading and incomplete statements, Ranbaxy has suffered economic injury within this State.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in this district, and because FDB is a resident of this district.

## Background

### *Absorica*™

8. On November 26, 2012, Ranbaxy announced the sales and promotional launch of Absorica™ (Isotretinoin) Capsules, an FDA-approved branded prescription product that Ranbaxy licenses from Cipher Pharmaceuticals Inc.

9. Absorica™ is a revolutionary, new Isotretinoin-based product. Isotretinoin is a retinoid that is used to treat serious acne and other skin diseases. Absorica™ is unique among Isotretinoin-based products because it is formulated with Lidose® technology that allows the product to be taken and to be effective without meals. In contrast, all other Isotretinoin-based products, such as Accutane®, for example, must be taken with a high fat meal to be therapeutically effective. For that reason, Ranbaxy paid Cipher a substantial premium for the licensing rights to Absorica™.

10. The requirement that Accutane® and all other Isotretinoin-based products except for Absorica™ be taken with a high fat meal is not a trivial one. For example, FDA guidelines regarding bioavailability and bioequivalence testing describe a "high fat" meal as one which is fifty percent fat. A sample meal recommended by the FDA as meeting its definition of "high fat" consists of two eggs fried in butter, two strips of bacon, two slices of toast with butter, four ounces of hash brown potatoes and eight ounces of whole milk. Accutane® and competing products are typically taken twice a day and each dose is to be consumed with a "high fat" meal.

3

Many patients would find it extremely difficult and/or unhealthy to consume a meal comparable to the one described above twice per day. In order to provide patients—particularly adolescents—with an effective acne treatment medication that did not require patients to eat two high fat meals every day, significant efforts were made to develop Absorica™ with Lidose® technology, and after years of research, establish to the FDA's satisfaction that Absorica™ is effective even when taken without a high fat meal or any food at all.

11. One of the most important metrics to understanding the therapeutic efficacy of a drug product is called area under the curve ("$AUC_{0-t}$"). $AUC_{0-t}$ measures the overall amount of the drug in the bloodstream after a dose. It is measured in both fasted conditions (where the patient takes the drug on an empty stomach) and unfasted conditions (where the patient takes the drug with food or after eating).

12. In fasted conditions, Absorica™'s $AUC_{0-t}$ is 83 percent greater than other branded Isotretinoin-based products, like Accutane®, and their generic Isotretinoin-based equivalents. In other words, Absorica™ is the only Isotretinoin-based product on the market that is effective when taken on an empty stomach.

13. This difference in $AUC_{0-t}$ under fasted conditions is highly significant because the population for which this product is most indicated, patients 12 years of age or older with severe acne, are known for skipping meals and/or having poor eating habits.

14. This difference in $AUC_{0-t}$ under fasted conditions also means that Absorica™ has no therapeutic equivalent and is not substitutable with any other Isotretinoin-based product when taken without food or high fat meals.

### *The FDA's Conclusions Regarding Absorica™*

15. Prescription drugs are deemed to be "therapeutically equivalent" if they can be safely substituted for each other with the full expectation that the substituted product will produce the same clinical effect and safety profile as the other product (*e.g.*, a branded drug and its generic equivalent).

16. The FDA issues a publication called the "Orange Book," which identifies drug products approved as safe and effective by the FDA pursuant to the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §§ 301, *et seq.*). The Orange Book also identifies which drugs the FDA deems to have therapeutic equivalents. When the FDA determines that a drug has one or more therapeutic equivalents, the drug is assigned one of a number of "A" ratings in the Orange Book. All other drugs are assigned one of a number of "B" ratings.

17. Absorica™ has been assigned a "BX" rating in the Orange Book which indicates that the FDA does not consider any other drug to be therapeutically equivalent to Absorica™.

18. Indeed, the FDA-approved labeling for Absorica™ expressly states that Absorica™ is neither "interchangeable" with Accutane® or its generic equivalents nor "substitutable" with any other Isotretinoin-based product. Accordingly, Absorica™ is properly classified as a "single source" (as opposed to a "multi-source") drug.

19. The FDA-approved labeling for Absorica™ likewise states that Absorica™ can be taken "without regard to meals" and the FDA-approved Medication Guide for Absorica™ expressly advises patients to "[t]ake Absorica™ 2 times a day without regard to meals, unless your doctor tells you otherwise."

### *What FDB Does*

20. FDB markets itself as "a recognized leader in med[ication] decision support," and a "[t]hought leader[] in practical and academic drug knowledge." FDB touts its drug information

5

services as having "rock solid credibility" and markets these services in part as assisting pharmacists when filling and dispensing prescriptions written by treating physicians. Indeed, FDB acknowledges on its website that it "plays an essential role in medication decision support for the majority of pharmacies in both the U.S. and Canada."

21.     FDB Subscribers pay for and rely on FDB's services when, among other things, making purchasing decisions and filling prescriptions.

22.     For example, FDB Subscribers, particularly pharmacists, rely on guidance contained in FDB's database when complying with the "generic substitution" laws that have been adopted by virtually every state in the country. Depending on the state, such laws either allow or require pharmacists to fill prescriptions that are written for a brand-name drug with the product's FDA-approved generic and therapeutic equivalent unless the prescribing physician expressly indicates otherwise. Pharmacists and other FDB Subscribers rely on information provided by FDB to determine whether one drug may be safely substituted for another.

### *FDB's False, Misleading, and Incomplete Database Statements Regarding Substitution of Absorica™*

23.     As described above, Absorica™ is a single-source product that, according to no less an authority than the FDA, is not the therapeutic equivalent of, and cannot be safely substituted for, other branded or generic Isotretinoin-based products.

24.     Nonetheless, in the database that it sells and distributes to FDB Subscribers, FDB describes Absorica™ as a "multi-source" product and assigns the very same Clinical Formulation identification number, or so-called "GCN_SEQNO," to both Absorica™ and all other Isotrenitoin-based products.

25.     Based on reports from manufacturers, distributors, pharmacists and other FDB Subscribers, FDB knows that pharmacists rely on FDB's GCN_SEQNO and source designation

fields to comply with their generic substitution law obligations and to make dispensing decisions about therapeutic equivalence, regardless of FDB's boilerplate disclaimers. Indeed, this is one of the primary reasons why FDB's services have value to FDB's Subscribers.

26. By assigning the same GCN_SEQNO to Absorica™ and all other Isotretinoin-based products and by identifying Absorica™ as a "multi-source" product, FDB falsely and incorrectly indicates to FDB Subscribers that Absorica™ is therapeutically equivalent to, and may be safely substituted for, other branded or generic Isotretinoin-based products.

27. As a direct result of and in reliance upon FDB's false, misleading and incomplete statements about Absorica™, numerous pharmacists across the country and other FDB Subscribers are deceived or misled into believing, incorrectly, that Absorica™ is freely interchangeable and substitutable with other Isotretinoin-based products.

28. As a result, in an effort to comply with their generic substitution law obligations, these pharmacists and other FDB Subscribers are routinely filling Absorica™ prescriptions with competing Isotretinoin-based products, notwithstanding the fact that those other products (a) are not therapeutically equivalent to Absorica™, (b) have a dramatically inferior $AUC_{0-t}$ than Absorica™ in fasted conditions, and (c) include markedly different instructions for use.

29. In fact, pharmacists have told Ranbaxy that their demand and orders for Absorica™ have been adversely influenced by FDB's listing of the product as multi-source rather than single-source and by FDB's designation of a common GCN_SEQNO for Absorica™ and other Isotretinoin-based products because, based on FDB's inaccurate representations, all these pharmacists mistakenly believe that they are required or permitted to fill Absorica™ prescriptions with a generic Isotretinoin-based product. This includes pharmacists from a national chain with a significant number of locations within this district.

30. When prescriptions written for Absorica™ are incorrectly filled with competing Isotretinoin-based products, Ranbaxy loses sales and market share. When this happens, Ranbaxy also suffers injury to its business, reputation and good will.

31. More importantly, when prescriptions written for Absorica™ are incorrectly filled with competing Isotretinoin-based products, the health and safety of patients is put at risk. Patients may not do as well on other branded or generic Isotretinoin-based products as they would on Absorica™, particularly if the patients, including adolescents, are using these products in fasted conditions or without food or high fat meals.

### *FDB's Refusal to Correct or Clarify its Misstatements*

32. FDB knows that the representations in its database regarding the source and substitutability of Absorica™ are false, misleading and incomplete.

33. Based on prior experience, FDB knows that, despite its attempt at boilerplate disclaimers, pharmacists and other FDB Subscribers understand, interpret and rely on FDB's description of Absorica™ as a multi-source product, as well as its designation of a common GCN_SEQNO for Absorica™ and all other Isotretinoin-based products, to mean that these products are therapeutically equivalent and may (or must) be freely substituted with one another in the prescription-filling process.

34. FDB knows that its false, misleading and incomplete statements in its drug database regarding Absorica™ are causing pharmacists to substitute other Isotretinoin-based products for prescriptions written for Absorica™, despite the fact that the products are not interchangeable, costing Ranbaxy millions of dollars in sales, injuring Ranbaxy's business, reputation and good will, and posing a threat to the health and safety of those patients who are being denied the drug product prescribed by their physicians.

35. Despite such knowledge, FDB refuses to correct or clarify the false, misleading and incomplete statements in its drug database regarding Absorica™.

36. On December 10, 2012, Ranbaxy alerted FDB in writing to the false, misleading and incomplete description of Absorica™ in FDB's drug database.

37. In addition, at FDB's request, Ranbaxy provided FDB with substantial documentation, including FDA-approved labeling and FDA product designation, establishing the non-substitutability of Absorica™, among other things.

38. Ranbaxy warned FDB that, as a result of its misrepresentations, (a) Ranbaxy lost sales and market share, (b) patients who were prescribed Absorica™, but improperly provided with another drug, were being put at risk, and (c) Ranbaxy would take legal action if FDB did not correct its misstatements about Absorica™.

39. Nonetheless, while not denying that Absorica™ is a single-source, non-substitutable product, FDB responded on January 8, 2013, claiming that FDB "review[s] products and assign[s] those that share the same ingredient, route of administration, dosage form and strength to the same category, for purposes of attaching relevant clinical data" and denying that it makes any "representation of pharmaceutical equivalence or substitutability."

40. On February 4, 2013, Ranbaxy sent another letter to FDB demanding corrective action, and advising FDB that one of its competitors, Medi-Span, correctly lists Absorica™ as a single-source product that is not substitutable with any other Isotretinoin-based product.

41. Medi-Span includes this listing precisely because it recognizes, contrary to what FDB claimed in its January 8, 2013 communication, that pharmacists who subscribe to services like those offered by Medi-Span and FDB rely on these services in general, and source

identifications in particular, to make substitutability determinations in order to comply with any applicable state law generic substitution obligations.

42. In its February 4, 2013 letter, Ranbaxy also informed FDB that iPLEDGE—the FDA REMS-mandated closed distribution program for Isotretinoin—also reflects that Absorica™ is a single-source product that is not substitutable with other Isotretinoin-based products.

43. Ranbaxy's February 4, 2013 letter also reminded FDB of the warnings in Ranbaxy's December 10, 2012 letter—namely, that, as a result of the confusion caused in the marketplace by FDB's misrepresentations, (a) Ranbaxy is continuing to lose sales and market share to competitors, (b) patients who need but are denied Absorica™ are continuing to be put at risk, and (c) Ranbaxy would have to take legal action unless FDB addressed its misstatements about Absorica™.

44. On July 3, 2013, Ranbaxy sent a final demand to FDB, together with a draft complaint, asking FDB to simply assign a unique GCN_SEQNO to Absorica™ in order to avoid litigation over the issue.

45. On July 11, 2013, FDB responded to Ranbaxy's final demand by refusing to make the requested correction to its database, thereby prompting this action.

46. Upon information and belief, FDB refuses to make this simple correction to its database despite being appraised of its inaccuracy and the harm it is causing to both Ranbaxy and the drug-consuming public, particularly adolescents, to save face and to continue enjoying revenues for its services.

## COUNT I
### (Trade Libel)

47. Ranbaxy repeats and realleges the allegations in paragraphs 1 through 46.

48. FDB has published false and defamatory written materials indicating that Absorica™ is a multi-source product that is substitutable with other Isotretinoin-based products; in fact, Absorica™ is a single-source product that is not interchangeable with or therapeutically equivalent to any other Isotretinoin-based product.

49. FDB has published these false and defamatory statements about Ranbaxy and its product to FDB Subscribers, including pharmacies who purchase and resell Ranbaxy products, like Absorica™.

50. FDB knows or reasonably should know that publishing these false and defamatory written materials to its pharmacy subscribers would likely induce such pharmacies to divert sales of Ranbaxy's Absorica™ to sales of Isotretinoin-based products made or distributed by others.

51. FDB's publication of these false and defamatory materials has, in fact, played a material and substantial part in inducing FDB's pharmacy subscribers to divert sales of Ranbaxy's Absorica™ to sales of Isotretinoin-based products made or distributed by others.

52. Ranbaxy has suffered special damages—in an amount to be determined at trial but believed to exceed $15 million—in the form of lost product sales and market share as a natural and immediate consequence of FDB's false and defamatory statements about Absorica™. Ranbaxy is entitled to a monetary award against FDB in an amount equal to these special damages.

53. Ranbaxy also has suffered and continued to suffer, as a direct result of FDB's conduct, harm to its business, reputation and good will for which no amount of monetary damages is adequate. Ranbaxy is entitled to equitable relief to address these injuries.

54. FDB's actions also reflect such gross indifference to, or reckless disregard of, the rights of Ranbaxy as to amount to willful or wanton conduct justifying an award of punitive damages against FDB in an amount to be determined at trial.

## COUNT II
### (Tortious Interference with Business Relations)

55. Ranbaxy repeats and realleges the allegations in paragraphs 1 through 46.

56. Ranbaxy does business with and enjoys good relations with numerous pharmacies in the State of Florida and across the country that purchase and resell Ranbaxy pharmaceutical products, including Absorica™.

57. FDB is aware of the relationships between Ranbaxy and these pharmacies. FDB also knows that Ranbaxy has a reasonable expectation that pharmacies will fill prescriptions for Absorica™ as written by treating physicians.

58. FDB has intentionally and unjustifiably interfered with Ranbaxy's relationships with pharmacies throughout the country by making false, misleading and incomplete statements about Absorica™ to those pharmacies.

59. As a direct result of FDB's false, misleading and incomplete statements about Absorica™ to FDB Subscribers, pharmacies are mistakenly substituting and filling prescriptions for Absorica™ with the Isotretinoin-based products of other manufacturers and distributors, causing Ranbaxy to lose sales and market share to its competitors.

60. To compensate it for such harm, Ranbaxy is entitled to an award of money damages against FDB in an amount to be determined at trial but believed to exceed $15 million.

61. Ranbaxy also has suffered and continues to suffer, as a direct result of FDB's conduct, harm to its business, reputation and good will for which no amount of monetary damages is adequate. Ranbaxy is entitled to equitable relief to address these injuries.

62. FDB's actions also reflect such gross indifference to, or reckless disregard of, the rights of Ranbaxy as to amount to willful or wanton conduct justifying an award of punitive damages against FDB in an amount to be determined at trial.

### Prayer for Relief

**WHEREFORE**, Ranbaxy demands judgment against FDB as follows:

(a) On both Count I and Count II, a permanent injunction compelling FDB to (i) cease and desist from any further false, misleading or incomplete statements about Absorica™, (ii) assign Absorica™ a unique GCN_SEQNO in its drug database, and (iii) correct and clarify its prior false, misleading and incomplete statements by amending its database and informing all relevant third parties to whom such statements were made that Absorica™ is a single-source product, not a multi-source product, that is not interchangeable or substitutable with any other Isotretinoin-based product;

(b) On both Count I and Count II, an award of compensatory damages in an amount to be determined at trial but believed to exceed $15 million, together with an award of punitive damages also in an amount to be determined at trial;

(c) An award of costs, and disbursements; and

(d) Such other relief as this Court deems just and proper.

### Demand for Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Ranbaxy demands a trial by jury on every issue in this action triable as of right by jury.

Respectfully submitted this 17th day of July 2013.

                               BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
                               Professional Association

By _____
John A. DeVault, III
Florida Bar No. 103979
E-mail: jad@bedellfirm.com
Michael E. Lockamy
Florida Bar No. 69626
E-mail: mel@bedellfirm.com
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Telephone: (904) 353-0211
Facsimile: (904) 353-9307

Jay P. Lefkowitz, P.C.
jlefkowitz@kirkland.com
Trial Counsel
Joseph Serino, Jr., P.C.
jserino@kirkland.com
Hunter Murdock
hmurdock@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Michael D. Shumsky
mshumsky@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200

(*Pro hac vice* to be applied for)

*Counsel for Plaintiff Ranbaxy Laboratories Inc.*