**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RANBAXY LABORATORIES INC.,

    Plaintiff,                                                      Case No. 3:13-CV-859-J-32TEM

v.

FIRST DATABANK, INC.,

    Defendant.

_____/

**DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO SECTION 425.16 OF THE CALIFORNIA CIVIL PROCEDURE CODE AND MEMORANDUM IN SUPPORT**

Defendant First Databank, Inc. ("FDB") hereby specially moves to strike Plaintiff Ranbaxy Laboratories Inc.'s ("Ranbaxy's") Complaint pursuant to the California anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16, on the grounds that Ranbaxy cannot establish through admissible evidence a probability of prevailing on its claims against FDB.

**INTRODUCTION**

As discussed in FDB's motion to dismiss, this case seeks to subjugate FDB's right to publish accurate information concerning prescription drugs to a Ranbaxy's desire to maximize profits. California's anti-SLAPP statute (Strategic Lawsuit Against Public Participation) was passed specifically to protect the First Amendment rights of speakers to comment on matters of public concern without fear that they will suffer retaliation in the form of meritless but costly litigation. *See* Cal. Civ. Proc. Code § 425.16. The anti-SLAPP statute creates a substantive immunity from such meritless suits by permitting a defendant to bring a special motion to strike at the outset of the litigation, which can be overcome only by a showing by the plaintiff, with evidence, of a probability of success on the merits.

1

Federal courts both in California and around the country have recognized California's strong interest in protecting the free speech rights of its speakers through the anti-SLAPP statute, and for that reason have held that, under well-settled choice-of-law principles, the anti-SLAPP statute applies even in cases brought outside of California.  In this case, there is no question that California substantive anti-SLAPP law should apply:  beyond California's strong interest in protecting free speech, the content was created in California and the statements were made by a California company.

FDB has met its burden under the anti-SLAPP statute to show that the statements at issue relate to a matter of strong public concern, namely the health and safety of patients prescribed the drug Absorica.  Indeed, the Complaint itself claims that FDB's accurate statements about Absorica have significant impacts on patient health and safety, and numerous cases have found statements regarding pharmaceutical drugs to be protected by the anti-SLAPP statute.  Accordingly, under the anti-SLAPP statute, Ranbaxy must demonstrate – with admissible evidence – a probability of success on the merits.  For the reasons set forth in FDB's motion to dismiss, it cannot do so, and its claims therefore must be stricken with prejudice.[1]

## STATEMENT OF ALLEGATIONS AND RELEVANT FACTS

In the interests of judicial economy, FDB hereby incorporates by reference the Statement of Allegations and Relevant Facts in its Motion to Dismiss and Memorandum in Support [Dkt. # 12; "FDB Motion to Dismiss"] as if fully set forth herein.  For the reasons set forth in FDB's Motion to Dismiss, all of the outside materials cited in FDB's motion to dismiss are properly before this Court for purposes of deciding FDB's Rule 12(b)(6) motion to dismiss.  FDB Motion

---

[1] For the reasons explained in FDB's previously filed motion to dismiss and its motion to transfer filed concurrently with this motion, this Court should transfer this action to California, where this motion may be considered along with FDB's motion to dismiss.  But, given the 60-day statutory deadline to file a motion to strike under the anti-SLAPP statute, FDB is filing this motion to secure its rights under the statute.

to Dismiss at 5 n.1. But, in any event, unlike Rule 12(b)(6) motions, motions to strike under the anti-SLAPP statute are not limited to the allegations in the complaint and documents incorporated by reference in the complaint. Instead, movants are permitted to introduce evidence, and plaintiffs must respond with admissible evidence showing that they are likely to prevail on their claims. Cal. Civ. Proc. Code § 425.16(b)(2) (requiring consideration of both supporting and opposing evidence). Accordingly, there is no question that the materials included with FDB's motion to dismiss are also properly considered in connection with this motion.

## MEMORANDUM OF LAW

### POINT I
### CALIFORNIA LAW, INCLUDING ITS ANTI-SLAPP STATUTE, APPLIES TO PLAINTIFF'S CLAIMS AGAINST FIRST DATABANK

**I.     Under Well-Settled Choice-of-Law Principles, California Law Applies**

In evaluating a conflict of laws question, a federal court must apply the conflict-of-law principles of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Acme Circus Operating Co. v. Kuperstock*, 711 F. 2d 1538, 1540 (11th Cir. 1983); *Lanchile Airlines v. Conn. Gen. Life Ins. Co. of N. Am.*, 731 F. Supp. 477, 479 (S.D. Fla. 1990). Thus, Florida conflict-of-law rules apply here (if this Court may exercise personal jurisdiction over FDB, which is the subject of challenge in FDB's motion to dismiss and this motion in no way waives that issue).

The Eleventh Circuit has set forth a three-step test for analyzing conflict-of-law issues:

> The first step in choice of law analysis is to ascertain the nature of the problem involved, *i.e.* is the specific issue at hand a problem of law of contracts, torts, property, etc. The second step is to determine what choice of law rule the state . . . applies to that type of legal issue. The third step is to apply the proper choice of law rule to the instant facts and thereby conclude which state's substantive law applies.

*Acme Circus*, 711 F.2d at 1540.  Applying the first step of the *Acme Circus* analysis here, there is no dispute that Plaintiff's claims of trade libel and tortious interference sound in tort.

Turning next to the applicable choice-of-law rule, in tort cases, Florida has adopted the "more flexible, modern approach" provided by the "most significant relationship" test of the Restatement (Second) of Conflict of Laws §§ 145, 146; *Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999, 1001 (Fla. 1980).  Section 145 provides that "[t]he rights and liability of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties."  Section 145 goes on to identify four contacts to be taken into account in determining the law applicable to a particular issue, taking into account their relative importance to the issue: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."  Restatement (Second) of Conflict of Laws § 145; *see also Peoples Bank & Trust Co. v. Piper Aircraft Corp.*, 598 F. Supp. 377, 381 (S.D. Fla. 1984) (choice of law determinations are rooted in the evaluation of the "contact of the states with the events and the parties").

In trade libel actions, the Restatement provides that "the local law of the state where the publication occurs determines the rights and liabilities of the parties . . . unless, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties, in which event the local law of the other state will be applied."  Restatement (Second) Conflict of Laws § 149 (concerning defamation); *id*. § 151 ("The choice-of-law rules involving injurious falsehood are the same as those involving defamation."); *Lanchile Airlines v.*

*Conn. Gen. Life Ins. Co. of N. Am.*, 731 F. Supp. 477, 478-80 (S.D. Fla. 1990) (applying § 149 to choice-of-law analysis in case alleging libel and tortious interference).

Applying the Section 145 factors to the facts here, it is clear that FDB's purported injurious conduct took place in California. It is the center of FDB's editorial operations, is where the data at issue was created and where all of the editorial decisions challenged by Ranbaxy were made, and where, as the Complaint notes, FDB's principal place of business is located. *See* Complaint ¶ 4; Supplemental Declaration of Julie Suko ¶ 5. Thus, the second § 145 factor suggests California law governs.

As to the parties' places of business, although Plaintiff asserts that its principal place of business is in Florida, its own public filings reflect that it is actually based in New Jersey. *See* Exhibits F-H, attached to the Declaration of Ravi V. Sitwala, submitted in support of FDB's Motion to Dismiss [Dkt. No. 15]. In contrast, FDB's principal place of business is indisputably in California. Complaint ¶ 4. Thus, the third §145 factor suggests either California or New Jersey law applies. No relationship relevant to the fourth §145 factor exists between the parties.

With regard to the place where the injury occurred, although Plaintiff asserts that it suffered injury in Florida, it does not allege that FDB's publication was directed at Florida, or that its injury was limited to Florida. Rather, Plaintiff concedes that FDB's audience is in no way limited geographically to Florida, but rather that it is national in scope. *See, e.g.*, Complaint ¶ 22. Even if the place of injury were in Florida, courts in this state have adopted the Restatement approach that "when the primary purpose of the tort rule involved is to deter or punish misconduct, the place where the conduct occurred has peculiar significance." *Dopson-Troutt v. Novartis Pharm. Corp.*, No. 8:06-CV-1708-T-24-EAJ, 2013 WL 3808205, at *3 (M.D. Fla. July 22, 2013) (internal quotation marks omitted) (citing *Krause v. Novartis Pharm. Corp.*,

5

No. 1:06cv12-SPM/GRJ, 2013 WL 785229, at *4 (N.D. Fla. Feb. 28, 2013) and Restatement (Second) of Conflict of Laws § 145, cmt. e). Thus, weighing the § 145 contacts suggests that California law should apply.

Moreover, even if this court were to hold that California law did not govern the underlying question of whether the communications at issue were actionable, FDB still would be entitled to avail itself of the California anti-SLAPP statute. Under Florida law, courts are required to analyze the contacts provided in the "most significant relationship" test in order to determine which state's law should apply to each particular <u>issue</u> under consideration. In other words, courts are not required to apply one state's law to all of the issues before it in a case; instead, court must undertake an issue-by-issue analysis. *Stallworth v. Hospitality Rentals, Inc.*, 515 So. 2d 413, 415 (Fl. Dist. Ct. App., 1987). Thus, "'different substantive issues in a single case may have to be resolved using the laws of different states where the choices influencing decisions differ.'" *Dopson-Troutt*, 2013 WL 3808205, at *2 (quoting *Foster v. United States*, 768 F. 2d 1278, 1281 (11th Cir. 1985)). Even if some aspects of a claim are properly analyzed under one state's law, other aspects of that claim may be analyzed under another state's law. *Foster*, 768 F. 2d at 1281 (describing conflicts doctrine of "depecage"); *Guenther v. Novartis Pharm. Corp.*, No. 6:08-cv-456-Orl-31DAB, 2013 WL 1225391, at *2 (noting use of depecage in Florida courts and applying conflict of laws analysis to determine whether punitive damages issue in case were covered by Florida law or New Jersey law, which provided a statutory immunity from punitive damages for drug companies). Where "the relevant local law of the state of conduct gave the defendant a special immunity, the interest of this state in having its rule applied would be clear." Restatement (Second) of Conflict of Laws § 146, cmt. e; *see also Dopson-Troutt*, 2013 WL 3808205, *3-*5 (applying New Jersey's statutory immunity for drug

companies to bar punitive damages); *Guenther*, 2013 WL 1225391, at \*2-\*4 (same); *Krause*, 2013 WL 785229, at \*3-\*5 (same).

As the Restatement makes plain in the specific context of speech-related claims, "whether a given communication is in fact defamatory and, if so, whether it constitutes libel" is a distinct issue from whether the publication "is protected by an absolute or by a qualified privilege" or other defenses. Rest 2d Conflict of Laws § 149 cmt. b; *see also id.* § 150(1) (in "multi-state defamation" action, apply law from state that, "with respect to the particular issue, has the most significant relationship"). This approach is consistent with the general view in defamation actions that a speaker is entitled to rely on defenses available in its state, regardless of what jurisdiction's law applies to the substantive claim. *See, e.g.*, *id.* § 145 cmt. d (law of the state of defendant's domicile can "be applied to determine whether [that] party is immune from tort liability to the other") (emphasis added); *Carolco Pictures Inc. v. Sirota*, 700 F. Supp. 169, 171 (S.D.N.Y. 1988) (applying New York law "to the discrete issue of an affirmative defense of privilege" in defamation action brought by California plaintiff against New York defendant).

Federal courts outside of California have conducted choice-of-law analyses and concluded that "California has a great interest in determining how much protection to give California speakers," *Global Relief Found. v. N.Y. Times Co.*, No. 01C8821, 2002 WL 31045394, at \*11 (N.D. Ill. Sept. 11, 2002); *accord Mero v. U.S. Figure Skating Ass'n*, No. 05-cv-73069, 2006 WL 163529, at \*6 (E.D. Mich. Jan. 20, 2006) (recognizing California's "great interest" in protecting speech by California speakers); *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1159 (N.D. Cal. 2003) (same); *see also Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013).

Having recognized this important interest, those courts have concluded that the anti-SLAPP statute applies when a California speaker is sued in another forum. In *Global Relief*, for instance, in response to an Illinois plaintiff's defamation claim in Illinois federal court, a California newspaper and its reporters filed a motion to strike under California's anti-SLAPP statute. *See* 2002 WL 31045394, at *10. The court explained that "since the injury occurred in Illinois, Illinois has a greater interest in application of its laws to issues underlying the defamation claim." *Id*. at *11. The court nevertheless held that "California has a great interest in determining how much protection to give California speakers such as [the California defendants]. Thus, California has the most significant relationship and the law of California will apply to defenses to defamation." *Id*. Based on that analysis, the court assumed that the SLAPP statute applied, but denied the motion to strike because the plaintiff had satisfied its burden of demonstrating a probability of prevailing. *See id.*; *see also Competitive Techs*., 286 F. Supp. 2d at 1158 (explaining that in *Global Relief* "[t]he court held that the anti-SLAPP statute applied").

Similarly, in *Blumenthal v. Drudge*, No. Civ. A. 97-1968PLF, 2001 WL 587860 (D.D.C. Feb. 13, 2001), a California defendant filed an anti-SLAPP motion in response to a defamation claim brought by District of Columbia domiciliaries. After considering the plaintiffs' argument that the anti-SLAPP "statute should not apply under their choice of law analysis," the court assumed that "the California Anti-SLAPP statute does apply in this case," but denied the defendant's motion because it was out of time. *Id*. at *1-2.

Indeed, the Second Circuit recently held that the California anti-SLAPP statute applies <u>regardless</u> of whether California law governs the merits of the underlying claim. *See Liberty Synergistics*, 718 F.3d 138. In *Liberty Synergistics*, the Second Circuit reversed a district court's determination that an anti-SLAPP motion to strike was not available where New York law

governed the merits of the plaintiff's malicious prosecution claim. 718 F.3d at 156-57. Critically, the Second Circuit held that the special immunity afforded by the anti-SLAPP statute must be made available to the defendant irrespective of whether New York law applied to the merits of the claim. *Id.*

As these cases make clear, when a California speaker seeks to invoke the immunity provided under the anti-SLAPP statute, as FDB does here, California's strong interest in protecting California speakers and speech emanating from California is implicated, and courts in other jurisdictions will consider the California speaker's special motion to strike.[2]

Accordingly, under Florida's choice-of-law rules, California has the most significant relationship to this matter, both with respect to the substantive law of defamation, and in any event with respect to the protection of free speech through the anti-SLAPP statute.

## II. The Substantive Immunity Created by the Anti-SLAPP Statute Applies in Cases Brought in Federal Court under Diversity Jurisdiction

That this suit is pending in federal court, as opposed to state court, does not alter the result. It is well-settled law that California's anti-SLAPP statute is a substantive immunity from suit, and accordingly, is available in an action brought under diversity jurisdiction. *See, e.g.*, *Batzel v. Smith*, 333 F.3d 1018, 1025-26 (9th Cir. 2003) ("Because California law recognizes the protection of the anti-SLAPP statute as a substantive immunity from suit, this Court, sitting in diversity, will do so as well."); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*

---

[2] As discussed in FDB's motion to dismiss, the court in *Schering Corp. v. First DataBank, Inc.* rejected application of the anti-SLAPP statute on choice-of-law grounds on facts similar to those here. *See* FDB Motion to Dismiss at 27 n.12 (discussing *Schering Corp. v. First DataBank, Inc.*, No. C 07-01142, 2007 WL 1176627, at *10 (N.D. Cal. Apr. 20, 2007)). FDB respectfully submits that the *Schering* court erred in failing to apply an issue-by-issue analysis to choice-of-law, instead focusing entirely on the substantive law that would apply to the product disparagement claim there (and also erred on that issue). FDB's appeal of the decision was pending when the case was dismissed based on a settlement that did not involve any payment or change in FDB's information. *See* FDB Motion to Dismiss at 27 n.12.

*Inc.*, 190 F.3d 963, 973 (9th Cir. 1999) (holding that anti-SLAPP motion-to-strike and attorneys' fees protections apply in federal court when sitting in diversity).

### III. FDB's Statements Are Protected under the Anti-SLAPP Statute

**A. California's SLAPP Statute Protects Publishers from Meritless Claims that Seek to Squelch Speech on Issues of Public Interest.**

The California anti-SLAPP statute broadly protects the discussion of issues of concern to the public by "nip[ping] SLAPP litigation in the bud by striking the offending causes of action[]." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042 (Cal. Ct. App. 1997); *Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th 180, 192 (2005) (the purpose of the law is "to prevent SLAPPs by ending them early and without great cost to the SLAPP target").

The SLAPP statute "establishes 'a two-step process for determining' whether an action should be stricken." *Varian Med. Sys.*, 106 P.3d at 966 (citation omitted). First, "a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (citation omitted). A defendant meets this burden by showing that the plaintiff's claims arise from "any written . . . statement or writing" on a public issue, or "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest." § 425.16(b)(1), (e)(2), (e)(4) (emphasis added).

This comprehensive language reaches "all kinds of claims" relating to speech about public issues. *Jarrow Formulas, Inc. v. LaMarche*, 74 P.3d 737, 745 (Cal. 2003) (citation omitted). It is "the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." *Martinez v. Metabolife Int'l, Inc.*, 6 Cal. Rptr. 3d 494, 499 (Cal. Ct. App. 2003) (citation and emphasis omitted). The California Court of Appeal has

held that the anti-SLAPP statute applies to claims against First DataBank relating to its publication of information regarding pharmaceutical drugs, *see Rivera v. First DataBank, Inc.*, 187 Cal. App. 4th 709, 717-18 (Cal. Ct. App. 2010), and courts routinely have applied the anti-SLAPP statute to strike the very sort of claims asserted by Ranbaxy against FDB. *E.g.*, *New.net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1113-15 (C.D. Cal. 2004) (striking claims for trade libel and tortious interference); *ComputerXpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 643-44 (Cal. Ct. App. 2001) (same).

Once a defendant has shown that the anti-SLAPP statute applies to a claim against it, the burden shifts to the plaintiff to demonstrate "a probability of prevailing on the claim." *Varian*, 35 Cal. 4th at 192 (quotations omitted). Plaintiff cannot rely on the bare allegations of its own pleading by showing that the petition survives a demurrer. *See Navellier v. Sletten*, 106 Cal. App. 4th 763, 776 (Cal. Ct. App. 2003). Instead, Plaintiff must "establish evidentiary support for [its] claim." *Id.* at 775-76 (quotations omitted). The Court applies a summary judgment-like standard in analyzing this motion. *Taus v. Loftus*, 40 Cal. 4th 683, 714 (2007). Specifically, Plaintiff must demonstrate that the claims are "supported by sufficient prima facie <u>showing of facts to sustain a favorable judgment</u> if the evidence submitted by the plaintiff is credited." *Taus*, 40 Cal. 4th at 713-14 (emphasis added). Otherwise the court must strike the complaint. Cal. Civ. Proc. Code § 425.16(b)(1).

**B.**  **<u>Ranbaxy's Claims Arise from FDB's Exercise of Its Constitutional Right to Free Speech</u>**

Here, there can be no question that Ranbaxy's claims arise from FDB's exercise of its constitutional right to free speech on matters of public concern. As the Complaint necessarily confirms, the information FDB publishes bears on patient health and safety. *See, e.g.*, Complaint ¶¶ 2, 31, 34. Publications about matters "affecting public health [are] of such inherent public

concern and stake that there could be no possible question" that they address issues of public interest. *United Med. Labs. v. CBS Inc.*, 404 F.2d 706, 711 (9th Cir. 1968). Not surprisingly, courts have consistently held that published statements on such topics are covered by the SLAPP statute. *See, e.g.*, *Rivera*, 187 Cal. App. 4th at 717-18 (FDB monographs concerning drugs); *DuPont Merck Pharm. Co. v. Superior Ct.*, 92 Cal. Rptr. 2d 755, 759 (Cal. Ct. App. 2000) (statements about equivalence of Coumadin and its generic counterpart); *Vess*, 317 F.3d at 1101, 1110 ("the diagnostic criteria for ADD" and "the use of Ritalin" to treat it); *Metabolife, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001) (safety of consuming ephedrine); *Sharper Image Corp. v. Consumers Union of U.S., Inc.*, No. 03-4094 MMC, 2004 WL 2554451, at *4 (N.D. Cal. Nov. 9, 2004) (efficacy of air cleaning products); *ARP Pharmacy Servs., Inc. v. Gallagher Bassett Servs., Inc*., 42 Cal. Rptr. 3d 256, 261, 263 (Cal. Ct. App. 2006) (statute applies to "essentially statistical information" relating to the "average fees pharmacies charge for dispensing pharmaceutical drugs to private customers"). In addition, FDB's publication of information concerning the FDA's conclusions regarding Absorica is protected as a "written or oral statement or writing made in connection with an issue under consideration or review by . . . [an] official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16(e)(2).

      Because each of Ranbaxy's claims arises from FDB's published statements on matters of public interest and also in connection with official FDA actions, FDB has met its burden of "showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess*, 317 F.3d at 1110 (citation omitted). Ranbaxy now bears the burden to demonstrate – through admissible evidence – that it has a probability of prevailing on the merits.

For the reasons set forth in FDB's Motion to Dismiss and Memorandum in Support, which FDB hereby incorporates by reference, Ranbaxy cannot make such a showing:

- First and foremost, Ranbaxy cannot establish that FDB published any false statement, express or implied, a necessary prerequisite to any claim for trade libel. Nor could an implied falsehood based on true facts support a trade libel claim as a matter of law.[3] FDB Motion to Dismiss at 18-28.

- Even if Ranbaxy could show falsity, FDB's accurate report of the FDA Orange Book information would be protected by the fair report privilege. *Id.* at 28.

- Ranbaxy cannot show actual malice. *Id.* at 28-29.

- FDB's statements regarding therapeutic equivalence are the product of scientific judgment, and are not provable facts that can give rise to a trade libel claim. *Id.* at 29-31.

- Ranbaxy has not alleged – and cannot show – special damages, let alone that any such damages were caused by FDB's conduct. *Id.* at 31-33.

- Ranbaxy cannot bring a tortious interference claim because it cannot show that FDB's statements were false, or that FDB's conduct was wrongful or malicious. *Id.* at 33-35.

Accordingly, the anti-SLAPP statute requires that the Complaint be stricken in its entirety.

---

[3] While the court in *Schering* stated in dicta that it would find Schering's claims in that case, which were substantially similar to Ranbaxy's claims here, non-frivolous enough to survive FDB's anti-SLAPP motion, it is clear that the court was not applying the proper standard. Since that decision, the California Supreme Court clarified that the burden on a plaintiff is not merely to show that its claim has "minimal merit" or is non-frivolous, as the *Schering* court held, 2007 WL 1176627, at *10, but rather to show on a summary judgment like standard that it can prevail on the claim based on the evidence submitted to the court, *Taus*, 40 Cal. 4th at 714. Under this standard, it is clear that the *Schering* court would have stricken the claims, as it expressly found Schering's claims to be unlikely to prevail, both in denying Schering's motion for a preliminary injunction and in characterizing the claims in its anti-SLAPP decision. *Schering Corp. v. First Databank Inc.*, No. C 07-01142, 2007 WL 1068206, at *7 (N.D. Cal. Apr. 10, 2007) (rejecting preliminary injunction motion because FDB's published information was entirely accurate); *Schering*, 2007 WL 1176627, at *10 (stating that Schering's "claim of falsity – while perhaps not likely to succeed – is not frivolous").

13

## **CONCLUSION**

For the foregoing reasons, FDB respectfully requests that Plaintiff's Complaint be stricken in its entirety, with prejudice, and that the Court grant FDB such other relief as it deems just.

Respectfully submitted,

        by: ___/s/ Ravi V. Sitwala_____
        Jonathan R. Donnellan (pro hac vice)
        Ravi V. Sitwala (pro hac vice)
        Stephen H. Yuhan
        Diego Ibargüen
        HEARST CORPORATION
        300 West 57th Street
        New York, New York 10019
        Telephone: 212-649-2020
        Facsimile: 212-649-2035
        jdonnellan@hearst.com
        rsitwala@hearst.com

        Timothy J. Conner
        Florida Bar No. 767580
        Jennifer A. Mansfield
        Florida Bar No. 0186724
        HOLLAND & KNIGHT LLP
        50 North Laura Street, Suite 3900
        Jacksonville, Florida 32202
        Telephone: 904-353-2000
        Facsimile: 904-358-1872
        Timothy.conner@hklaw.com
        jennifer.mansfield@hklaw.com

        *Attorneys for Defendants*

Dated: September 16, 2013

**CERTIFICATE OF CONFERENCE**

I hereby certify pursuant to Local Rule 3.01(g) that the undersigned counsel for Defendant has contacted counsel for Plaintiff in this matter concerning this motion and that the parties are continuing to confer.  Counsel for Defendant will update its Local Rule 3.01(g) certificate regarding this motion as soon as Plaintiff has confirmed its position concerning the relief requested in this motion.

/s/ Ravi V. Sitwala
Ravi V. Sitwala

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of September, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will notify by electronic mail counsel of record noted below.

John A. DeVault, III
Bedell, Dittmar, DeVault, Pillans & Coxe, P.A.
101 East Adams Street
Jacksonville, FL 32202
jad@bedellfirm.com

/s/ Ravi V. Sitwala
Ravi V. Sitwala