UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RANBAXY LABORATORIES INC.,

        Plaintiff,

v.                             Case No.: 3:13-cv-00859-J-32TEM

FIRST DATABANK, INC.,

        Defendant.

_____

**PLAINTIFF RANBAXY LABORATORIES INC.'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

        FDB's motion to dismiss for lack of personal jurisdiction and failure to state a claim is both procedurally and substantively deficient and must be denied.  First, given FDB's extensive contacts with and dealings in Florida, including in this particular matter, this Court has both general and specific jurisdiction over FDB under Florida's long arm statute, and the exercise of jurisdiction over FDB is perfectly consistent with constitutional due process.  Second, FDB's request to dismiss Ranbaxy's trade libel and tortious interference claims fails for a variety of reasons.  Most notably, FDB's argument that Ranbaxy has failed to state a claim for relief blatantly ignores the well-pled allegations in Ranbaxy's Complaint.  FDB also attempts to introduce and rely on numerous materials not properly before this Court on a motion to dismiss.  And, finally, FDB's motion asks this Court to decide a number of fact-based and intent-driven questions that are not appropriately resolved on a motion to dismiss.

## FACTUAL BACKGROUND

### The Parties

Ranbaxy sells and distributes branded prescription pharmaceutical products.  (Compl. ¶ 3).  Most of Ranbaxy's day-to-day operations take place out of a nearly 250,000 square foot warehouse and office complex in Jacksonville, Florida.  (Anvekar Decl. ¶¶ 3, 4.)  Ranbaxy distributes Absorica™ and all of its other brand pharmaceutical products out of Jacksonville, Florida.  (*Id.* ¶ 4.)  Ranbaxy lists its Jacksonville warehouse and distribution center on the prescribing inserts of each of its products.  (*Id.*)  Jacksonville is the locus of Ranbaxy's trade sales efforts.  (*Id.*)  And as a result of these substantial operations, Ranbaxy pays Florida income tax.  (*Id.* ¶ 6.)  On November 26, 2012, when Ranbaxy announced the sales and promotional launch of Absorica™, its press release stated that it was "based in Jacksonville, Florida."  (*Id.*, Ex. G.)  Accordingly, its principal place of business is Jacksonville, Florida.  (Compl. ¶ 3.)

FDB provides drug information to the U.S. pharmacy industry for pay.  (*Id.* ¶ 1).  FDB has the following contacts with Florida:  it is registered and authorized to do business in Florida (*id.* ¶ 4); it maintains an agent for service of process in Florida (*id.* ¶ 6); it was served with process in Florida in this action (*see* Docket # 18); it advertises extensively in Florida (*id.*); it contracts with customers in Florida (*id.*); it provides services in Florida (*id.*); it transmits publications into Florida (*id.*); it derives substantial revenue from business conducted in Florida (*id.*); and it is planning three customer conferences in Florida in September through December 2013, including its nationwide "customer seminar" on November 6-8 (Serino Decl., Exs. A, B) (collectively, "FDB's Florida Contacts").

FDB markets itself as "a recognized leader in med[ication] decision support," and acknowledges on its website that it "plays an essential role in medication decision support for the majority of pharmacies" in the U.S., including many in Florida.   (Compl. ¶ 20.)   FDB subscribers, particularly pharmacists, rely on guidance contained in FDB's database to determine whether one drug may be safely substituted for another.   (*Id.* ¶ 22.)

**Absorica™**

On November 26, 2012, Ranbaxy announced the sales and promotional launch of Absorica™ (Isotretinoin) Capsules, a revolutionary Isotretinoin-based product used to treat serious acne and other skin diseases.   (*Id.* ¶¶ 8-9.)  Absorica™ is unique among Isotretinoin-based products because it is specially formulated with Lidose® technology that, according to the FDA, allows the product to be therapeutically effective when taken without food.   (*Id.*)   In contrast, other Isotretinoin-based products are not formulated with Lidose® technology and, according to the FDA, must be taken with high fat meals to be therapeutically effective.   (*Id.*)   As a result, Absorica™ has no therapeutic equivalent and is not substitutable with any other Isotretinoin-based product when taken without food or high fat meals.   (*Id.* ¶¶ 15-19.)

The FDA has assigned Absorica™ a "BX" rating in its Orange Book, meaning the FDA does not consider any other drug to be therapeutically equivalent to Absorica™.   (*Id.* ¶ 17.)   The FDA-approved labeling for Absorica™ states that Absorica™ is neither "interchangeable" with Accutane® (another branded Isotretinoin product) or its generic equivalents nor "substitutable" with any other Isotretinoin-based product.   (*Id.* ¶ 18.)   Importantly, therefore, Absorica™ is properly classified as a "single source" drug rather than a "multi-source" drug.   (*Id.*)

**FDB's False Statements**

Despite the fact that the FDA recognizes that no other Isotretinoin-based product can be effectively substituted for Absorica™ when taken without food, FDB lists Absorica™ as a multi-source product in the database it sells and distributes to its subscribers, including pharmacists in Florida and throughout the U.S.  (*Id.* ¶¶ 24-29.)  Likewise, despite the fact that Absorica™ uses a special and proprietary formulation, known as Lidose® technology, FDB's database assigns the very same Clinical Formulation identification number, or "GCN_SEQNO," to Absorica™ and all other Isotretinoin-based products.  (*Id.* ¶ 24.)

FDB knows that the representations in its database regarding the source and substitutability of Absorica™ are false, misleading and incomplete.  (*Id.* ¶ 32.)  Based on reports from manufacturers, distributors, pharmacists and other subscribers, FDB knows that pharmacists rely on FDB's GCN_SEQNO and source designation fields to comply with their generic substitution law obligations and to make dispensing decisions about therapeutic equivalence.  (*Id.* ¶ 25.)  Indeed, this is one of the primary reasons why FDB's services have value to FDB's subscribers.  (*Id.*)  By assigning the same GCN_SEQNO to Absorica™ and all other Isotretinoin-based products and by identifying Absorica™ as a "multi-source" product, FDB falsely and incorrectly informs pharmacists that other Isotretinoin-based products can be freely substituted for Absorica™.  (*Id.* ¶ 26.)  Despite such knowledge, FDB refuses to correct or clarify the false and misleading statements in its drug database regarding Absorica™.  (*Id.* ¶ 35.)

**Harm to Ranbaxy**

Pharmacists across the country and in Florida have been ordering less Absorica™ from Ranbaxy.  (*Id.* ¶ 29.)  Several of these pharmacists have advised Ranbaxy that the reason for this

reduced demand for Absorica™ is FDB's drug database.  (*Id.*)  These pharmacists have informed

Ranbaxy that because FDB's database indicates that other (less expensive) Isotretinoin-products

may be safely substituted for Absorica™, these pharmacists are filling prescriptions for

Absorica™ with these other, lower-cost Isotretinoin products.  (*Id.* ¶ 28.)  As a result, Ranbaxy is

losing sales and market share.  (*Id.* ¶ 30.)  It is suffering harm to its business, reputation and

good will.  (*Id.* ¶ 29-30.)  And, in addition, the health and safety of patients is put at risk, as

patients may not do as well on other branded or generic Isotretinoin-based products as they

would on Absorica™.  (*Id.* ¶ 31.)

**The Motion to Dismiss**

Ranbaxy's Complaint contains two claims for relief, one for trade libel and one for

tortious interference.  FDB has moved to dismiss the Complaint on personal jurisdiction grounds

and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(2) and (6).

## ARGUMENT

When considering a motion to dismiss for lack of personal jurisdiction under Federal

Rule of Civil Procedure 12(b)(2), "[t]he district court must construe the allegations in the

complaint as true, to the extent they are uncontroverted by defendant's affidavits or deposition

testimony."  *See Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *see also Crowe v.

Paragon Relocation Res., Inc*., 506 F. Supp. 2d 1113, 1119 (N.D. Fla. 2007).  "[W]here the

evidence presented by the parties' affidavits and deposition testimony conflicts, the court must

construe all reasonable inferences in favor of the non-movant plaintiff."  *See Morris*, 843 F.2d at

492.  The sole evidence that FDB offers in support of its motion relates to Ranbaxy's principal

place of business, and FDB has not submitted any affidavits regarding its activities in Florida.

Thus, the Complaint's allegations regarding FDB's substantial business activities in Florida are presumed to be true. *See Morris*, 843 F.2d at 492.

"The threshold for surviving a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a low one." *Deutsche Bank Nat. Trust Co. v. Foxx*, No. 13-cv-115, 2013 WL 5291128, at *1 (M.D. Fla. Sept. 19, 2013) (citation omitted). In evaluating the legal sufficiency of a complaint, a court accepts as true all factual allegations in the complaint and construes the facts in the light most favorable to the plaintiff. *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). A complaint need only plead enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007).

Finally, while FDB's motion raises choice of law issues and cites primarily to California and New Jersey cases, "[a] court need only undertake a conflict of law analysis if a true conflict exists." *Five for Entm't S.A. v. Rodriguez*, No. 11-24142-CIV, 2013 WL 632977, at *5 (S.D. Fla. Feb. 20, 2013); *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1171 (11th Cir. 2009) ("In any conflict of laws analysis, the first issue that needs to be addressed is whether a conflict actually exists."). There is no conflict here on Ranbaxy's claims for trade libel and tortious interference under the laws of Florida, New Jersey and California. In fact, FDB admits it is "not aware of any material conflict with California or New Jersey law." (Def.'s Br. at 16 n.7.) So this Court should simply apply the law of the forum state. *See Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1234, n.21 (11th Cir. 1995); *Faddish v. Buffalo Pumps*, 881 F. Supp. 2d 1361, 1368, n.3 (S.D. Fla. 2012).

I.    **THIS COURT HAS PERSONAL JURISDICTION OVER FDB.**

Personal jurisdiction over FDB is proper under three different sections of Florida's long arm statute and is consistent with constitutional due process. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) ("A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."). First, this Court has general jurisdiction over FDB pursuant to Fla. Stat. § 48.193(1)(a)(1) because FDB is "[o]perating, conducting, engaging in, or carrying on a business or business venture in this state." Second, this Court has specific jurisdiction over FDB pursuant to Fla. Stat. § 48.193(1)(a)(2) because FDB committed "a tortious act within this state." Third, this Court has specific jurisdiction over FDB pursuant to Fla. Stat. § 48.193(1)(a)(6) because FDB has caused injury to Ranbaxy "within this state" at a time when it was "engaged in solicitation or service activities within this state" or its products "were used or consumed within this state in the ordinary course of commerce, trade, or use." The exercise of jurisdiction over FDB on any one of these grounds is consistent with constitutional due process concerns.

A.    **This Court Has General Jurisdiction Over FDB Pursuant to Fla. Stat. § 48.193(1)(a)(1).**

FDB's Florida Contacts, defined above at 2, are extensive, intentional and systematic, thereby subjecting FDB to the general jurisdiction of this Court. *See* Fla. Stat. § 48.193(1)(a)(1). There are a number of cases on point. In *Keston v. FirstCollect, Inc.*, for example, the court found that general jurisdiction was proper because (1) the defendant was registered to do business within Florida, (2) service of process was made on its registered agent within the state

and (3) there was an "absence of evidence that FirstCollect does not conduct any other collection business in the state."  523 F. Supp. 2d 1348, 1353 (S.D. Fla. 2007).  Here, FDB's Florida Contacts include all of these factors plus additional ties to Florida not present in *Keston*.

Similarly, in *Benedict v. Gen. Motors Corp.* the court held that defendant "'submitted itself to the jurisdiction of Florida courts'" because it was "formally qualified to do business in Florida and designated a registered agent."  142 F. Supp. 2d 1330, 1334-35 (N.D. Fla. 2001). FDB also is "formally qualified to do business in Florida" as a Missouri corporation and has "designated a registered agent" in Florida for service of process.  (See Compl. ¶ 6); *see also Carmel & Co v. Silverfish*, LLC, No. 1:12-CV-21328-KMM, 2013 WL 1177857, at *3 (S.D. Fla. Mar. 21, 2013) (finding general jurisdiction over defendant who made portion of its total sales in Florida and advertised in Florida); *Baker v. Elecs., Inc. v. Pentar Sys., Inc.*, 219 F. Supp. 2d 1260, 1263 (M.D. Fla. 2002) (finding general jurisdiction based on interstate travel and communications in pursuit of a business venture); *Bank of Wessington v. Winters Gov't Secs. Corp.*, 361 So.2d 757, 758-759 (Fla. Dist. Ct. App. 1978) (finding general jurisdiction based on ten separate oral transactions in Florida).

The cases that FDB relies upon do not change this result because they involve contacts with Florida that were either sporadic or, at best, far less extensive than FDB's Florida Contacts. For example, FDB neglects to mention that, in *Associated Transp. Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A.*, (*see* FDB Br. at 14-15), defendant's contacts with Florida consisted of only "nine sales over four years."  197 F.3d 1070, 1075 (11th Cir. 1999). This pales in comparison to FDB's Florida Contacts.  Likewise of no moment is FDB's reliance on *In re Farmland Indus., Inc.*, No. 3:05-CV-587-J-32MCR, 2007 WL 7694308 (M.D. Fla. Mar.

8

30, 2007) for the proposition that "registering to do business and appointing a registered agent in the state of Florida, ***without more***," does not establish general jurisdiction.  (*See* FDB Br. at 14) (emphasis added).  Unlike the contacts in that case, FDB's Florida Contacts include much "more" than just registering to do business in Florida and appointing a registered agent.

**B.      This Court Has Specific Jurisdiction Over FDB Pursuant to Fla. Stat. § 48.193(1)(a)(2).**

This Court has specific jurisdiction over FDB pursuant to Fla. Stat. § 48.193(1)(a)(2) because the Complaint alleges that FDB has committed "a tortious act within this state."  FDB does not challenge this aspect of specific jurisdiction; instead it argues that such jurisdiction does not comport with constitutional due process.  That argument is dealt with and disposed of in section I.D below.

A party need not be physically present in Florida to commit a tort within the state.  *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002).  Rather, "telephonic, electronic, or written communications into Florida may form the basis for personal jurisdiction under section 48.193(1)(b) if the alleged cause of action arises from the communications."  *Id.*; *accord Pathman v. Grey Flannel Auctions, Inc.*, 741 F. Supp. 2d 1318, 1324 (S.D. Fla. 2010) (tortious act "can occur through the nonresident defendant's telephonic, electronic, or written communications into Florida").  Here, FDB directs the statements in its database into Florida by marketing and publishing them extensively within the state, a fact that FDB does not, and cannot, deny.  (Compl. ¶¶ 6, 29.)  Thus, FDB's tortious act of publishing false statements regarding Absorica™ in Florida easily satisfies the governing standard.  *See Wendt*, 822 So. 2d at 1260; *see also Renaissance Health Pub., LLC v. Resveratrol Partners, LLC*, 982 So. 2d 739, 740 (Fla. Dist. Ct. App. 2008) (defendant committed tort within Florida by maintaining an

interactive website that libeled plaintiff's product and by selling competing products in Florida); *Internet Solutions Corp. v. Marshall*, 39 So.3d 1201, 1206 (Fla. 2010) (jurisdiction proper where "defamatory material about a Florida resident placed on the Web and accessible in Florida").

### C. The Court Has Specific Jurisdiction Over FDB Pursuant to Fla. Stat. § 48.193(1)(a)(6).

The Court has specific jurisdiction over FDB under Fla. Stat. § 48.193(1)(a)(6) because FDB's tortious actions have caused injury to Ranbaxy in Florida while FDB was engaged in "solicitation or service activities within this state" or while statements "processed" by FDB were "used . . . within this state in the ordinary course of commerce, trade, or use." (Compl. ¶¶ 4, 6, 29); Fla. Stat. § 48.193(a)(6). Numerous courts have found jurisdiction under this section in circumstances where, as here, an out of state defendant markets or sells a product or service that causes harm to a plaintiff in Florida.

For example, in *Precision Software Servs., Inc. v. Fortune Fin. Sys., Inc.*, No. 98-136-CIV-FTM-17D, 1998 WL 1759759, at*6 (M.D. Fla. Nov. 9, 1998), the court held that "[t]he ongoing act of selling products knowing that these products would be distributed throughout Florida, shows to this Court that [defendant] should have reasonably known that it could be 'haled' into court in Florida if its products infringed upon a copyright of a resident of Florida." Similarly, in *Arkansas Glass Container Corp. v. Hackett*, 412 So. 2d 442 (Fla. Dist. Ct. App. 1982), the court held that the defendant's sales activities in Florida were sufficient to confer jurisdiction under Section 48.193(a)(6). *See also Ford Motor Co. v. Atwood Vacuum Mach. Co.*, 392 So. 2d 1305, 1308 (Fla. 1981); *Hatton v. Chrysler Canada, Inc.*, no. 2:12-CV-186-FTM-29, 2013 WL 1296081, at *5 (M.D. Fla. Mar. 30, 2013); *Yellow Pages Photos, Inc. v. Ziplocal, LP*, No. 8:12–CV–755–T26TBM, 2012 WL 2952452, at *5 (M.D. Fla. July 19, 2012).

FDB's only challenge to jurisdiction on this ground is that Ranbaxy did not suffer injury in Florida because its principal place of business purportedly is in New Jersey.  In support of this contention, FDB relies solely on filings with the Florida and New Jersey Secretaries of State Offices, which FDB claims show Ranbaxy's principal place of business to be in New Jersey. (*See* Sitwalla Decl., at Exs. F, G & H.)  There are at least two fundamental problems with this argument.  <u>First</u>, FDB cites to no authority for the proposition that, in an economic loss case like this, injury is felt only in the plaintiff's principal place of business and not in its place of residence.  Ranbaxy has established that most of its day-to-day trade sales and distribution operations are based in Florida; that it maintains offices in Florida from which those operations are conducted and from which many of its consultants work; that it lists its Jacksonville warehouse and distribution center on the prescribing inserts of each of its products; that it pays Florida tax; that its press release announcing the sales and promotional launch of Absorica™ stated that Ranbaxy was "based in Jacksonville, Florida"; and that FDB's tortious conduct is directly impacting Ranbaxy's business operations in Florida by reducing demand for a product that Ranbaxy distributes from Florida to pharmacies in Florida (as well as the rest of the country).  (Anvekar Decl. ¶¶ 3-7; Compl. ¶ 30.)  FDB does not and cannot contest these facts. *Exhibit Icons, LLC v. XP Cos., LLC*, 609 F. Supp. 2d 1282, 1298, n.9 (S.D. Fla. 2009) (tortious act "resulting in injury to a Florida resident confers personal jurisdiction."); *see also Am. Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 432-35 (2d Cir. 1971) (situs of injury for intentional tort was where the plaintiffs lost business).

<u>Second</u>, even if economic injury can be felt only in one's principal place of business, the corporate filings offered by FDB are insufficient to establish New Jersey as Ranbaxy's principal

11

place of business or to rebut the Complaint's allegations that Florida is Ranbaxy's principal place of business for purposes of determining where economic injury is felt. *See, e.g., Uglunts v. Americare Servs., Inc.,* No. 3:12–CV–4388–D, 2013 WL 3809681, at *4 n.3 (N.D. Tex. July 23, 2013) (filings with Secretary of State "are alone insufficient to show the actual place of business") (citation omitted); *York Grp. v. Pontone,* No. 10-CV-1078, 2012 WL 3127141, at *16 (W.D. Pa. July 31, 2012) ("[C]ourts have specifically rejected corporate reports, tax filings, and corporate-registration statements as being evidence sufficient to demonstrate a corporation's principal place of business.") (citation omitted); *Ballard v. Union Carbide Co.*, No. CIV. A. 2:11-0366, 2011 WL 4597349, at **2 & 3 (S.D.W.Va. Oct.3, 2011) (same); *Balachander v. AET Inc.,* No. H-10-4085, 2011 WL 4500048, at **8-9 (S.D.Tex. Sept. 27, 2011) (corporate registration statement "unpersuasive" regarding party's principal place of business).  There is an obvious difference between a party's principal place of business when analyzing issues such as place of citizenship, headquarters or corporate overhead and infrastructure, on the one hand, and principal of place of business for purposes of determining where a business has suffered harm, on the other hand.  Here, as is made clear by the Complaint and the Anvekar Declaration, the key business operations pertaining to the trade sales and distribution of Absorica™ are conducted out of Florida, which, therefore, is where the harm was felt.   At the very least, there is conflicting evidence on this question and, when confronted with conflicting evidence on a motion to dismiss for lack of personal jurisdiction, the court must "construe all reasonable inferences in favor of the non-movant plaintiff."  *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 809-10 (11th Cir. 2010).  Accordingly, the Court must conclude that Ranbaxy's principal place of business is in Florida such that the economic harm suffered by Ranbaxy was felt in Florida.

### D.       Jurisdiction Over FDB Complies With Due Process.

The exercise of either general or specific jurisdiction over FDB in this case is consistent with constitutional due process.  Constitutional due process is satisfied in the context of general jurisdiction where, as here, a defendant has "continuous and systematic" contacts with the forum such that it may be hailed into court there in actions that do not arise out of or relate to its activities in the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984).  In the context of specific jurisdiction, due process concerns are satisfied as long as jurisdiction would not "offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945).  Traditional notions of fair play are satisfied as long as the defendant has "minimum contacts" with the forum such that it "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 109 (1987) (quotation omitted).  Here, both standards are satisfied.

FDB's Florida Contacts are sufficiently "substantial and not isolated" to permit this Court to exercise general jurisdiction over FDB consistent with due process and regardless of whether Ranbaxy's claims relate to those contacts.  Indeed, "[t]he 'substantial and not isolated activity' requirement of the long arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause."  *Exhibit Icons*, 609 F. Supp. 2d at 1294-95.

The exercise of specific jurisdiction over FDB also comports with due process.  The Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783, 790 (1984) is on point.  There, the Court held that jurisdiction over the defendant complied with due process where the defendant

13

libeled the plaintiff in a publication knowing that it would be distributed and cause injury in the forum state.  *Calder*, 465 U.S. at 790.  Here, as in *Calder*, FDB knowingly publishes its false statements regarding Absorica™ to subscribers located in Florida, knowing that it could cause improper substitutions and lost sales for Ranbaxy within Florida.  (Compl. ¶¶ 3, 6, 29.)

In addition, consistent with concerns of due process, this Court has routinely exercised jurisdiction over defendants who, like FDB, use the internet or other electronic means to publish statements that are accessible in Florida and cause injury within the state.  *See, e.g., Pelc v. Nowak*, No. 8:11-CV-79-T-17TGW, 2011 WL 4481571, at*4 (M.D. Fla. Sept. 27, 2011); *Nida Corp. v. Nida*, 118 F. Supp. 2d 1223, 1231 (M.D. Fla. 2000); *Croft v. Lewis*, No. 809-CV-1370-T-27AEP, 2010 WL 1707426 (M.D. Fla. Apr. 1, 2010).

FDB's contention that Ranbaxy's principal place of business is New Jersey, not Florida, is of no moment with respect to due process concerns.  It has nothing to do with whether FDB should reasonably expect to stand suit in Florida based on FDB's Florida Contacts, general jurisdiction grounds, or specific jurisdiction for committing a tort within Florida.  To the extent it has relevance in determining whether injury occurred in Florida, the case of *Hongjin Sui v. Wu*, 8:11-CV-37-T-23TBM, 2011 WL 1396994, at *5 (M.D. Fla. Apr. 13, 2011) is directly on point.  There, this Court asserted jurisdiction over a defendant who "conducts no business in Florida" but published allegedly false statements about plaintiffs who sold plastinated body specimens for public exhibitions, including exhibitions in Florida.  This Court expressed no due process concerns, despite the fact that "neither [plaintiff] reside[s] in Florida," because "the plaintiffs possess a reputation in Florida and conduct business in Florida."  (*Id.*)  If anything, the case for due process is considerably greater here.  The defendant in *Wu* did not even conduct business in

Florida; here, we have FDB's Florida Contacts.  In addition, Ranbaxy has its principal place of business and key business operations in Florida.  At the very least, like the plaintiff in *Wu*, it has a reputation in Florida and conducts business in Florida.  (*See*, *e.g.*, Anvekar Decl. ¶ 3-7.)  Accordingly, exercising jurisdiction over FDB here, whether general or specific, will not "offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co.*, 326 U.S. at 316.

The cases that FDB relies upon are inapposite.  In three of those cases, the courts in fact held that jurisdiction over the defendant was proper.  *See Calder*, 465 U.S. at 789; *Licciardello v. Lovelady*, 544 F.3d 1280, 1287-88 (11th Cir. 2008); and *NR Media v. Too Much Media*, No. CIV. A. 06-3988JAP, 2008 WL 544670, at *4-6 (D.N.J. Feb. 26, 2008).  In the other three cases, *Full Sail*, *Bioheart*, and *Marshall*, the defendants derived no revenues in Florida from their alleged misconduct.  *See Full Sail, Inc. v. Spevack*, No. 6:03-cv-887-ORL-31JGG, 2003 WL 25277185, at *4 (M.D. Fla. Oct. 21, 2003); *Bioheart, Inc. v. Peschong*, No. 13-60304-CIV, 2013 WL 1729278, at *3 (S.D. Fla. Apr. 22, 2013); *Internet Solutions Corp. v. Marshall*, No. 6:07-CV-01740-ACC-KRS, Slip Op. at *7 (M.D. Fla. Sept. 30, 2010).[1]  Here, by contrast, Ranbaxy has alleged that FDB not only receives substantial income from operating its electronic database and from Florida customers, but also markets its services extensively in Florida.  (Compl. ¶¶ 6, 29.)  Indeed, under the rule articulated in *Bioheart*, a case relied upon by FDB, these facts alone are sufficient to satisfy due process:  "If the defendant enters into contracts with residents of a

---

[1] *JB Oxford Holdings, Inc. v. Net Trade, Inc.* is wholly inapposite since that case involved a defendant who expressly "prohibited the sale of its services to Florida residents."  76 F. Supp. 2d 1363, 1367 (S.D. Fla. 1999).

foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper." *Bioheart*, 2013 WL 1729278, at *4.[2]

## II.      RANBAXY'S COMPLAINT STATES A CLAIM FOR TRADE LIBEL.

The elements of a claim for trade libel are (1) a falsehood (literal or implied), (2) that has been published or communicated to a third person, (3) when defendant-publisher knows or has reason to know that it will likely result in inducing others not to deal with the plaintiff, (4) the falsehood plays a material and substantial part in inducing others not to deal with the plaintiff, and (5) special damages are proximately caused as a result of the published falsehood. *Border Collie Rescue, Inc. v. Ryan,* 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citation omitted). FDB challenges only elements (1), (3) and (5). (Def.'s Br. at 18.) FDB also seeks dismissal on the basis of two affirmative defenses—the fair report privilege and the scientific opinion privilege. (*Id.*) None of these arguments has merit.

### A.      Ranbaxy Has Adequately Alleged That FDB's Statements Are False and Misleading.

#### 1.      Ranbaxy Has Alleged Actual Falsity.

Ranbaxy has adequately alleged at least two false and misleading statements by FDB. First, FDB's database describes Absorica™ as a "multi-source drug" when, in fact, it is a "single source drug." (Compl. ¶ 24.) Second, FDB's database assigns to Absorica™ and all other Isotretinoin-based products the same GCN_SEQNO, or Clinical Formulation identification number, even though FDB knows that its customers interpret that designation to mean that each

---

[2] FDB has also moved to dismiss on grounds of improper venue. That aspect of the motion deserves little attention. Because FDB is subject to this Court's personal jurisdiction, as discussed above, venue also is proper here pursuant to 28 U.S.C. § 1391(b)(3). In addition, FDB has since moved to transfer venue under 28 U.S.C. §1404, implicitly conceding that venue is not improper *per se*. (Docket No. 26.)

of those products contains the same ingredients and is therapeutically equivalent to other Isotretinoin based-products such that those products may be safely substituted for Absorica™. (*Id.* ¶ 26.) In contrast, the Complaint alleges that Absorica™ contains unique ingredients—that is, unlike other Isotretinoin-based products, Absorica™ is formulated with proprietary Lidose® technology that allows the drug to remain therapeutically effective even when taken without food, let alone high fat meals. (*Id.* ¶ 8.)

FDB's argument that its identification of Absorica™ as "multi-source" is not false because it is allegedly consistent with the FDA's Orange Book does not withstand scrutiny. As an initial matter, the Orange Book does not identify Absorica™ as a multi-source drug. Rather, as FDB's own excerpt demonstrates, the Orange Book suggests that ***Isotretinoin*** is a multi-source drug. (Def.'s Br. at 7.) That is different than saying that Absorica™ is a multi-source drug, particularly for the purposes of determining whether other Isotretinoin-based products may be safely substituted for Absorica™.

The Orange Book is also unhelpful to FDB because FDB uses a definition of "multi-source" that is different from the definition that FDB attributes to the Orange Book. FDB admits that its user manual explains that "the 'Multi-Source/Single Source Indicator' field 'specifies whether a product's clinical formulation . . . is only available from a single labeler or from multiple labelers.'" (Def.'s Br. at 9.) But the phrase "clinical formulation" is not found in the Orange Book. So by designating Absorica™ as a multi-source drug in its database, FDB is telling its subscribers that Absorica™'s "clinical formulation" is available from "multiple labelers." (*See id.*) But the Complaint alleges that Absorica™'s clinical formulation is materially different from other Isotretinoin-based products. (Compl. ¶ 9 ("Absorica is unique

17

. . . because it is formulated with Lidose® technology that allows the product to be taken and effective without meals.")).  FDB's contrary representation is therefore false.

Another reason why the Orange Book provides no support for FDB's argument is that it does not even contain an express definition of "multi-source."  Put differently, there is no support for FDB's assertion that the Orange Book defines "multi-source" to mean "pharmaceutical equivalence." (Def.'s Br. at 20.)  But even if there were an express definition to be found, the Orange Book is not controlling legal authority on the definition of "multi-source," much less on what a reasonable user of FDB's database would understand the term "multi-source" to mean.  At most, FDB's citation to the Orange Book and its purported understanding by a reasonable user serves only to create a factual question about the definition of "multi-source" that cannot be resolved on a motion to dismiss.  *See Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 (11th Cir. 1997) ("[I]f genuine  issues of material fact exist, the motion to dismiss should have been denied and the question presented to the jury."); *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (courts "do not consider anything beyond the face of the complaint and documents attached thereto").

In addition, in focusing on the supposed "implied" definition of "multi source" in the FDA's Orange Book, FDB ignores the "express" definition of "multiple source drug" found in the United States Code.  The reason for this is obvious: the Code definition reveals that Absorica™ is not a "multi-source" drug and, accordingly, FDB's database statement to the contrary is literally false.  The United States Code defines "[t]he term 'multiple source drug,'" in relevant part, as a drug "for which there is at least 1 other drug product which-- (I) ***is rated as therapeutically equivalent*** (under the Food and Drug Administration's most recent publication

of "Approved Drug Products with Therapeutic Equivalence Evaluations"), [and] (II) . . . is pharmaceutically equivalent ***and bioequivalent***, as defined in subparagraph (C) and as determined by the Food and Drug Administration."   42 U.S.C. § 1396r-8(k)(7) (emphasis added).  Here, as alleged in the Complaint, no other drug product is rated as "therapeutically equivalent" or "bioequivalent" to Absorica™.  (Compl. ¶¶ 9-19.)

FDB fares no better in its attempt to defend its inaccurate and misleading GCN_SEQNO, or Clinical Formulation identification number, for Absorica™.  <u>First</u>, FDB's assertion that its database cures any misleading implication about substitutability here by providing the FDA's therapeutic equivalence codes—a fact not alleged in the Complaint—is entirely undermined by its own admission that those codes are not always displayed when pharmacists query the database because "[d]epending on the software pharmacists use to view the information, it may be displayed in different ways."  (Def.'s Br. at 9 n.5.)  In other words, even if discovery later substantiates FDB's unsupported and extraneous assertion that the database might "sometimes" display the FDA's therapeutic equivalence codes, that at best concedes that the database "sometimes" does ***not*** display that information.  Thus, in many cases there is no cure for FDB's misleading assignment of an identical GCN_SEQNO to Absorica™ and all other Isotretinoin-based products.

<u>Second</u>, FDB's reliance on admittedly "boilerplate" disclaimers in its 3,000 plus page user manual in an attempt to address FDB's misleading GCN_SEQNO statements is not properly before this Court on this motion to dismiss and, in any event, does not refute these misstatements as a matter of law.  (Def.'s Br. at 12-13.)  The user manual is not properly before this Court because it was not referred to in the Complaint, it is not central to the claims in the Complaint,

its contents are in dispute, and FDB attached only selected excerpts, rather than the entire manual, to its motion to dismiss.  *Fin. Sec. Assur*, 500 F.3d at 1284; *see also Doe v. First Nat. Bank of Chicago*, 865 F.2d 864, 873 (7th Cir. 1989).  Moreover, FDB offers no evidence that this exact document was distributed to, much less read by, all pharmacists who access FDB's MedKnowledge database and were thereby exposed to FDB's misrepresentations.  *See Horsley v. Feldt*, 304 F.3d 1125, 1135 (11th Cir. 2002) (holding that questions of authenticity and completeness precluded considering transcripts of the defendant's statements on a Rule 12(c) motion).  But even if the user manual were properly before this Court, the law is clear that, on a motion to dismiss, a defendant may not rely on manuals and other extraneous materials to explain or cure otherwise false and misleading statements.  *See Avram v. Samsung Elecs. Am., Inc.*, No. CIV. 2:11-6973 KM, 2013 WL 3654090 (D.N.J. July 11, 2013) (finding that "[a]ny disclaimer in the user manual's Limited Warranty is ineffective [to disprove breach]; at least, it cannot be presumed effective as a matter of law for purposes of a motion to dismiss").

If anything, the user manual supports Ranbaxy's allegation that FDB's GCN_SEQNO for Absorica™ is false and misleading.  As FDB admits, its user documentation informs those who rely on its database that products that share a GCN_SEQNO also share the same "[1] ingredient(s), [2] strength, [3] dosage form, and [4] route of administration for a drug formulation."  (Def.'s Br. at 9.)  But the Complaint alleges that Absorica™ contains unique ingredients designed to allow the drug to remain effective even when taken without food. (Compl. ¶ 9 ("Absorica™ is unique among Isotretinoin-based products because it is formulated with Lidose® technology that allows the product to be taken and effective without meals.").

Accordingly, FDB's database falsely and incorrectly suggests that other Isotretinoin-based products share the same ingredients as Absorica™, and therefore can be freely substituted for it.

2.      Ranbaxy Has Adequately Alleged Falsity By Implication.

FDB's challenge to Ranbaxy's alleged attempt to plead falsity by implication fails as a matter of both fact and law.  It fails as a matter of fact because FDB says Absorica™ is a multi-source drug product but it is a single source drug product.  FDB says Absorica™ has the same formulation and ingredients as all other Isotretinoin-based products, but it does not.  Among other things, it has a special formulation that increases absorption and therapeutic effectiveness when taken without food as compared to other Isotretinoin-based products, which require not only food but high fat meals to be effective.  (Compl. ¶ 19.)  FDB's statements suggest that Absorica™ is therapeutically equivalent to and may be safely substituted for all other Isotretinoin-based products, but the Complaint, and the FDA, state otherwise.  (*Id.* ¶ 18.)  Accordingly, Ranbaxy has adequately alleged a claim based on implied falsity (in addition to one for literal falsity, as discussed above).

FDB's argument fails as a matter of law because there is nothing wrong with trying to allege and prove falsity by implication in a trade libel claim.  More specifically, it is well settled that a trade libel claim may be based on a statement that the maker knows has been and will be understood by the recipients in a way that is factually false.  *See, e.g., Nat'l Numismatic Cert. v. Ebay, Inc.,* No. 6:08-CV-42-ORL-19GJK, 2008 WL 2704404, at * 19 * & *20, at n.26 (M.D. Fla. July 8, 2008) (holding that statement that insinuates a falsehood can serve as the basis of a defamation claim); *see also Off Lease Only, Inc. v. Carfax, Inc.,* No. 12-80193-CV, 2012 WL 1966372 (S.D. Fla. May 31, 2012); *Leavitt v. Cole*, 291 F. Supp. 2d 1338, 1342 (M.D. Fla.

2003); *Johnson v. Clark*, 203CV490FTM33SPC, 2005 WL 1632083, at *2 (M.D. Fla. July 6, 2005) (recognizing claim for slander "[w]here the 'words on their face in their usual and natural signification are not injurious, but are injurious only as a consequence of extrinsic facts'").

At bottom, FDB's entire argument is nothing but an attempt to second-guess the very facts alleged in the Complaint and to read the minds of the recipients of FDB's false statements. For example, FDB argues—without citation to any authority—that "[t]he only implication that one could reasonably take from FDB's assignment of the same [GCG_SEQNO] to Absorica™ and the other Isotretinoin products with the same strength is that the drugs are pharmaceutically equivalent." (Def.'s Br. at 25.) But the facts alleged in the Complaint—which must be accepted as true—demonstrate that numerous pharmacists do in fact understand FDB's assignment of the same GCN_SEQNO to indicate therapeutic equivalence and substitutability. (Compl. ¶¶ 25-29.) Indeed, the Complaint alleges that, in reliance on FDB's statements, pharmacists have told Ranbaxy that they are substituting other Isotretinoin-based products for prescriptions written for Absorica™. (*Id.* ¶¶ 27-29.) The same is true as to FDB's argument that "there is no basis for a reasonable pharmacist to equate pharmaceutical equivalence with therapeutic equivalence." (Def.'s Br. at 25.) To begin with, this argument begs the question. FDB ignores the fact that its representations about the meaning of its "multi-source" designation and GCN_SEQNO are not simply representations of pharmaceutical equivalence. (*See* Section II.A.1 above.) This argument also ignores the Complaint's allegations that pharmacists are in fact equating FDB's supposed statements of pharmaceutical equivalence with therapeutic equivalence. (Compl. ¶¶ 27-29.) Such an argument, in which FDB attempts to establish what is reasonable as a matter of fact, has no place in a motion to dismiss. *See e.g., Jackson*, 372 F.3d at 1262 (court must

accept as true all factual allegations in the complaint and construe the facts in the light most favorable to the plaintiff).

The cases that FDB relies on are easily distinguished. The cases it cites for the proposition that false implication claims are barred as a matter of law are inapposite. *Auvil v. CBS 60 Minutes* was a summary judgment case that turned on the tone, tenor and unspoken suggestions in a television program. 67 F.3d 816, 822 (9th Cir. 1995). This is a motion to dismiss case that turns on specific statements, not tone and tenor. *Films of Distinction, Inc. v. Allegro Film Productions, Inc.*, likewise turns on tone, tenor and unspoken suggestions, rather than specific statements. 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998). *De Falco v. Anderson* is even less helpful to FDB as it was decided following trial, not on motion to dismiss. 506 A.2d 1280, 1280 (N.J. App. Div. 1986). Moreover, that case involved alleged falsity, not from "the omission of material facts, but rather from the editorial choice of layout." *Id.* at 1284 (citation omitted). Here, of course, the falsity of FDB's statements arises directly out of its omission and misrepresentation of material facts.

The cases FDB cites in ostensible support of its argument about what a reasonable pharmacist would understand, (Def.'s Br. at 25), are likewise distinguishable and of no help. Those cases, *U.S. Pharm. Corp. v. Trigen Labs, Inc.*, No. 1:10-CV-0544-WSD, 2011 WL 446148, at *4 (N.D. Ga. Jan. 21, 2011) and *Schering Corp. v. First Databank Inc.*, No. C 07-01142, 2007 WL 1068206 (N.D. Cal. Apr. 10, 2007), involved requests for injunctive relief where the plaintiff had to establish a likelihood of success on the merits, not to mention irreparable harm; here, of course, Ranbaxy need only establish the plausibility of its claims to survive the motion to dismiss. And, in any event, as FDB admits the *Schering* court denied

23

FDB's special motion to strike, meaning that the court found that "the complaint is legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment," *Schering*, 2007 WL 1176627, at *9.[3]  Indeed, in its order denying the motion, the *Schering* court concluded that it could not "find as a matter of law that these identical [GCN_SEQNO] codes do not communicate to a pharmacist that the drugs are therapeutically equivalent and substitutable." *Id.* at *10.  This Court should come to the same conclusion.

### B.      Ranbaxy Has Adequately Alleged Malice.

FDB's argument that Ranbaxy has not alleged malice is easily dispensed with.  As FDB acknowledges, the element of malice is satisfied if the "defendant knew that the statements at issue were false or acted in reckless disregard of the truth."  (Def.'s Br. at 29 (citing *Durando v. Nutley Sun*, 37 A.3d 449, 458-59 (N.J. 2012).)  Ranbaxy's Complaint alleges that "FDB knows that the representations in its database regarding the source and substitutability of Absorica™ are false, misleading and incomplete."  (Compl. ¶ 32.)  Ranbaxy further alleges that this fact is known by FDB "[b]ased on reports from manufacturers, distributors, pharmacists and other FDB Subscribers" (*id.* ¶ 25), "based on prior experience" (*id*. ¶ 33) and based on numerous letters Ranbaxy has provided to FDB (*id.* ¶¶ 36, 40, 42-44).  The Complaint also alleges FDB's knowing and reckless disregard of such knowledge.  *See e.g. id.* ¶ 35 ("Despite such knowledge, FDB refuses to correct or clarify the false, misleading and incomplete statements in its drug database regarding Absorica™.")  Accordingly, Ranbaxy has adequately alleged malice.  *See* Fed. R. Civ. P. 9(b) ("Malice . . . may be alleged generally.").

---

[3] FDB's argument that the *Schering* court applied the wrong standard cannot be reconciled with fact that the case it cites for the "proper" standard also applied the exact same standard as *Schering*. *See Taus v. Loftus*, 151 P.3d 1185, 1204-05 (Cal. 2007) (the plaintiff 'must demonstrate that the complaint is both ***legally sufficient and supported by a prima facie showing of facts to sustain a favorable judgment*.'") (citations omitted) (emphasis added).

### C.       Ranbaxy Has Adequately Alleged Special Damages.

FDB's argument that Ranbaxy has not alleged special damages ignores the well-pled allegations of the Complaint and rests on a misinterpretation of law.  FDB ignores numerous allegations in the Complaint that Ranbaxy has "lost product sales and market share" as a result of FDB's tortious conduct.  (Compl ¶¶ 27-29, 52.)  As explained in the Complaint, this loss occurs because sales that would otherwise go to Ranbaxy on prescriptions written for Absorica™ are being diverted to manufacturers and distributors of other Isotretinoin-based products by pharmacists who, in reliance on FDB's misstatements, mistakenly conclude that these other products are substitutable with Absorica™.  (*Id.* ¶¶ 27-29.)  As a result, these pharmacists fill prescriptions for Absorica™ with other Isotretinoin products, thereby causing Ranbaxy special damages in the form of lost sales and lost market share.  (*Id.*)  Indeed, the Complaint includes allegations that specific pharmacists have admitted to Ranbaxy that they are substituting other products for Absorica™ prescriptions.  (*Id.* ¶ 29.)

FDB is also incorrect in arguing that Rule 9(g) applies here.  That rule, and its general application to special damages, does not apply to the kinds of "special damages" that are sometimes required in defamation or libel cases.  *Leavitt*, 291 F. Supp. 2d at 1344-45; *see also Pierson v. Orlando Reg'l Healthcare Sys., Inc.,* 619 F. Supp. 2d 1260 (M.D. Fla. 2009) (holding that elements of defamation claim—including special damages—need only be pled generally).  Rule 9(g) is "concerned with giving proper notice of certain types of damage"—i.e., those "beyond the ordinary or general damage resulting from invasion of a plaintiff's right and 'for which he ought to give warning in his pleadings.'"  *Leavitt*, 291 F. Supp. 2d at 1344 (quotation marks omitted).  The "special damages" requirement in certain defamation cases, by contrast,

refers only to a "claim for actual economic loss" that is subject to the pleading standard of Rule 8(a)(2).  *Id.* at 1344.

But even under Rule 9(g) Ranbaxy has adequately alleged special damages.  FRCP 9(g) "requires no more than a specific statement that allows Defendants to prepare a responsive pleading and begin their defense."  *Italiano v. Jones Chems., Inc.,* 908 F.Supp. 904, 907 (M.D. Fla. 1995) (citations omitted) (finding that general allegations concerning "[p]roperty which has been rendered unmarketable," "lost business opportunity given the loss of a potential real estate sale," and "response costs incurred," were sufficient to satisfy Rule 9(g)).  The very cases that FDB cites recognize that, to plead special damages, a plaintiff need do no more than identify the "pecuniary loss that has been realized or liquidated, such as lost sales, or the loss of prospective contracts with customers."[4]  *Patel v. Soriano*, 848 A.2d 803, 835 (N.J. App. Div. 2004); *Nat'l Numastic Certification LLC v. Ebay, Inc.*, No. 08-CV-ORL-19GJK, 2008 WL 2704404, at *19-20 (M.D. Fla. July 8, 2008) (same).  Ranbaxy's allegations that it has lost both "sales" and "market share" due to pharmacy-level substitution caused by reliance on FDB's misstatements easily satisfies Rule 9(g) to the extent it applies.  *See Falic v. Legg Mason Wood Walker*, Inc., 347 F. Supp. 2d 1260, 1269-70 (S.D. Fla. 2004) (identifying specific customers who refuse to deal adequately pleads special damages); *Meldeau Intern. Inc. v. Goodyear Tire & Rubber Co.,* 750 F.Supp. 1574, 1579 (S.D. Fla. 1990) ("The Complaint in the initial case reproduced the allegedly defamatory statement and described its publication.  This is sufficient to place Defendant on notice of the claim it will be defending.  This satisfies the requirements of the

---

[4] Consistent with this case law, FDB acknowledges that Ranbaxy can adequately plead special damages by "identify[ing] specific customers *or* sales lost," (Def.'s Br. at 31 (emphasis added)), though none of the cases that FDB cites support its assertion that a plaintiff could also do so by "trac[ing] a definitive loss of market share to the defendant's false publication (and exclud[ing] all other causes)."  (Def.'s Br. at 31.)

Federal Rules."). In fact, in *Patel v. Soriano*, a case cited by FDB, the court held that allegations that the defendant's false statements "caused [plaintiff] to lose referrals" adequately alleged special damages. 848 A.2d at 836.

Finally, FDB's causation argument is similarly flawed. <u>First</u>, FDB's sleight of hand citation to laws prohibiting the substitution of B-rated drugs is irrelevant. (Def.'s Br. at 32.) Ranbaxy is *not* alleging that Absorica™, a B-rated drug, is being improperly substituted for other Isotretinoin-based products; rather, Ranbaxy alleges that other Isotretinoin-based products are being improperly substituted for Absorica™. <u>Second</u>, FDB's argument that pharmacists who are substituting other Isotretinoin-based products for Absorica™ are "exercis[ing] their independent professional judgment" attempts to prove too much at motion to dismiss and is simply inconsistent with the Complaint, which alleges that pharmacists are substituting other Isotretinoin-based products for Absorica™ because they mistakenly believe (as a result of FDB's misstatements) that those other products are interchangeable. (Compl. ¶¶ 28-29.) Indeed, the Complaint alleges that this very fact has been reported to Ranbaxy by pharmacists who subscribe to FDB's database. (*Id.* ¶ 29.)

## D.     Neither The Fair Report Privilege Nor the Scientific Opinion Privilege Applies.

FDB's attempted reliance on the affirmative defenses of the fair report privilege or the scientific opinion privilege is misplaced. As an initial matter, affirmative defenses are not appropriately considered on a motion to dismiss. *See Chapin Revenue Cycle Mgmt., LLC v. JDA eHealth Sys., Inc.*, 8:11-CV-858-T-33AEP, 2012 WL 469824, at *4 (M.D. Fla. Feb. 13, 2012) (holding that the assertion of "privilege as an affirmative defense . . . is inappropriate in a motion to dismiss" because it is "a factual question to be determined by a jury"); *see also Holtzman v.*

*B/E Aerospace, Inc.*, 07-80551-CIV, 2008 WL 2225668, at *1 (S.D. Fla. May 29, 2008) (recognizing that opinion is an "affirmative defense[] to a claim of defamation"); *Schafer v. Time, Inc.*, 142 F.3d 1361, 1369 (11th Cir. 1998) (same, for fair report privilege).

Moreover, FDB's assertion of these two privileges is contradictory. If FDB is merely parroting FDA information—as it claims when it asserts the fair report privilege—then it cannot be "express[ing] an opinion on the question" of therapeutic equivalence. (Def.'s Br. at 31.) And if it is asserting an independent scientific opinion—as it claims when it seeks refuge within that privilege—then it cannot simply be "accurately convey[ing] the FDA's conclusions regarding the drug." (*Id.* at 28.) In fact, neither privilege applies.

The fair report privilege does not apply because FDB's database does not, as FDB claims, merely report the FDA's conclusions about Absorica™ as contained in the Orange Book. (*Id.*) As noted above, the Orange Book does not contain any conclusion about whether Absorica™—rather than Isotretinoin—is a multi-source drug. (*See* above at section II.A.1.) And FDB admits that its database might not always display the FDA's bioequivalence ratings "[d]epending on the software pharmacists use to view the information." (Def.'s Br. at 9 n.5.) Moreover, the Orange Book does not contain any GCN_SEQNO codes, which are unique to FDB's database. Finally, FDB's database is not an "accurate" report of the FDA's Orange Book. The Orange Book appears to recognize that other Isotretinoin-based products cannot be substituted for Absorica™. But FDB's database suggests that they can. (Compl. ¶ 26.)

The scientific opinion privilege does not apply because there are no facts in the Complaint—nor in FDB's motion to dismiss—suggesting that FDB has performed any analysis of or reached any independent conclusion about the therapeutic equivalence of Absorica™. (*See*

Def.'s Br. at 29-31.)  Indeed, FDB goes out of its way to disclaim that it is making any kind of judgment about therapeutic equivalence.  (*See id.* at 13 ("FDB explicitly does not take a position on which indicators should be used in substitution decisions."), 21 ("The single-source/multi-source distinction is tied solely to pharmaceutical equivalence, not therapeutic equivalence."), and 25 ("FDB does not imply therapeutic equivalence.").)  In any event, opinions are protected against libel and slander claims only "when a defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public."  *Hoch v. Rissman, Weisberg, Barrett*, 742 So. 2d 451, 459 (Fla. Dist. Ct. App. 1999); *Redco Corp. v. CBS, Inc.*, 758 F.2d 970, 972-73 (speaker must have "adequately disclosed the basis for the opinions expressed").  And FDB's database does not set out the facts on which its supposed opinion is based.  *Johnson*, 2005 WL 1632083, at *3 (opinions are not protected if it "is based on facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication").

## III.   RANBAXY HAS ADEQUATELY ALLEGED A CLAIM FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS.

Ranbaxy has stated a claim for tortious interference with business relations because it has alleged that (1) it has business relationships with pharmacies, (Compl. ¶ 56); (2) FDB knows of these relationships, (*id.* ¶¶ 34, 38, 57); (3) FDB has intentionally and without justification interfered with Ranbaxy's business relationships with pharmacies by publishing false and misleading information regarding Absorica™, (*id.* ¶¶ 34, 58.); and (4) Ranbaxy has lost sales as a result of the breach of these relationships, (*id.* ¶¶ 27-29, 59).  *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985) (stating elements of tortious interference claim).  In its motion, FDB makes three arguments for dismissal of this claim, none of which has merit.

First, FDB argues that Ranbaxy has not alleged a false statement. (Def.'s Br. at 33-35.) This argument fails for the reasons set forth above, which demonstrate that the Complaint contains well-pled allegations of express and implied false statements. (*See* Section II.A, above.)

Second, FDB argues that Ranbaxy has not alleged actual malice. (Def.'s Br. at 33-35.) This argument fails because, as set forth above, the Complaint contains allegations that FDB has acted with actual malice by, among other things, refusing to correct or clarify its misstatements notwithstanding its actual knowledge from multiple sources (including letters from Ranbaxy) of the confusion and injury such statements are causing. (*See* Section II.B, above).

Third, and finally, FDB argues that Ranbaxy has failed to allege an intentional or unjustified interference. (Def.'s Br. at 24 (citing *MacDougall v. Weichert*, 677 A.2d 162, 174 (N.J. 1996)). This argument fails because intentional or unjustified interference may be shown by malice or greed, both of which are alleged here. *Tamiami Trail Tours*, 463 So. at 1127. As set forth above, Ranbaxy has alleged malice. (*See* Section II.B above.) Ranbaxy has also alleged greed: FDB does not want to change its database because it would be embarrassing to admit its error; in addition, if FDB is forced to take a position with subscribers on whether it does or does not provide guidance as to therapeutic equivalence and substitutability, that may cause many subscribers to rethink the need for their subscriptions and/or their willingness to pay a premium for such services. (Compl. ¶¶ 46, 58.) Accordingly, FDB's motion to dismiss Ranbaxy's tortious interference claim should be denied.

## CONCLUSION

For the foregoing reasons, FDB's motion to dismiss should be denied.

Dated: September 30, 2013

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

By:   s/Michael E. Lockamy
    John A. DeVault, III
    Florida Bar No. 103979
    E-mail: jad@bedellfirm.com
    Michael E. Lockamy
    Florida Bar No. 69626
    E-mail: mel@bedellfirm.com
    The Bedell Building
    101 East Adams Street
    Jacksonville, Florida 32202
    Telephone: (904) 353-0211
    Facsimile: (904) 353-9307

Jay P. Lefkowitz, P.C.
E-mail: jlefkowitz@kirkland.com
Joseph Serino, Jr., P.C.
E-mail: jserino@kirkland.com
Matthew F. Dexter
E-mail: mdexter@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York  10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

Michael D. Shumsky
E-mail: mshumsky@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile:  (202) 879-5200

*All admitted pro hac vice*

*Counsel for Plaintiff Ranbaxy Laboratories Inc.*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 30, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

    s/Michael E. Lockamy
Michael E. Lockamy
Florida Bar No. 69626
E-mail: mel@bedellfirm.com
Bedell, Dittmar, DeVault,
Pillans & Coxe, P.A.
The Bedell Building
101 East Adams Street
Jacksonville, Florida 32202
Counsel for Plaintiff