UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RANBAXY LABORATORIES INC.,

    Plaintiff,

v.                                Case No.: 3:13-cv-00859-J-32TEM

FIRST DATABANK, INC.,

    Defendant.

_____

**PLAINTIFF RANBAXY LABORATORIES INC.'S OPPOSITION TO
DEFENDANT'S SPECIAL MOTION TO STRIKE PURSUANT TO SECTION 425.16
OF THE CALIFORNIA CIVIL PROCEDURE CODE**

      The primary question presented by FDB's motion to strike is whether California's procedural rules, on the one hand, or the Federal Rules of Civil Procedure, on the other hand, govern whether this Court may dismiss an action on a preliminary basis based on the pleadings or on matters outside the pleadings. By its motion to strike, FDB asks this Court to substitute California state procedural rules for the Federal Rules of Civil Procedure when determining whether to dismiss Ranbaxy's action or permit it to go forward. But as FDB already knows from a decision against it on a similar motion in a nearly identical case, California's procedural rules do not apply in this Court (or anywhere else outside of California); moreover, and in any event, Ranbaxy's facts and evidence are more than sufficient to defeat FDB's strike motion. In *Schering Corp. v. First DataBank Inc.*, No. C 07-01142 WHA, 2007 WL 1176627, at *2 (N.D. Cal. Apr. 20, 2007), the plaintiff alleged that FDB's database falsely identified its pharmaceutical product as "multi-source" and assigned it the same identifier as other

formulations of the drug, even though they were not therapeutically equivalent. Here, Ranbaxy makes the same core allegations, *i.e.*, that FDB falsely identifies Absorica™ as a multi-source drug and assigns the same identifier to Absorica™ as it does to other, non-substitutable Isotretinoin formulations. (Compl. ¶¶ 9-14, 17, 24.) In *Schering*, the U.S. District Court for the Northern District of California, applying New Jersey law, denied FDB's motion to strike Schering's complaint on both choice-of-law and substantive grounds, holding that a New Jersey court would never apply California's anti-SLAPP rule. The court further held that the claims had sufficient merit that "a reasonable jury might find that First DataBank is communicating false, product-disparaging information." 2007 WL 1176627, at *8-10. FDB's motion here is even weaker than the one rejected in *Schering*, and it should be denied for any one of three independent reasons.

      First, as both common sense and precedent dictate, California's anti-SLAPP rule does not apply in federal court where Federal Rules of Civil Procedure 8, 12 and 56 control the issue and directly collide with the anti-SLAPP rule. Second, California's anti-SLAPP rule would be inapplicable even if it did not conflict with Rules 8, 12 and 56 because California law does not apply here and, in any event, a Florida court would not import California's procedural law, including the anti-SLAPP rule. Indeed, FDB fails to cite a ***single case*** decided by a court sitting outside of California that has applied California's anti-SLAPP rule. Third, and finally, while there is no need for this Court to reach the merits of FDB's motion, consistent with *Schering*, Ranbaxy has made an evidentiary showing that is more than sufficient to defeat the motion on the merits.

## ARGUMENT[1]

A federal court's analysis of whether to apply a state rule—whether substantive or procedural—instead of or in addition to the Federal Rules of Civil Procedure follows the well-settled framework most recently discussed in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). The court must first determine whether a federal rule "answers the question in dispute." *Id.* at 398. If so, the federal rule governs except in the rare case when it "it exceeds statutory authorization or Congress's rulemaking power." *Id.* Only if the federal rule "is inapplicable or invalid" will the court "wade into *Erie*'s murky waters." *Id.* But even "[u]nder the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427-28 (1996). And a federal court identifies the applicable state substantive law based on a choice of law analysis using the laws of the forum in which the courts sits. *St. Paul Fire & Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 (11th Cir. 2009) ("A federal court sitting in diversity, as in this case, must apply the choice of law principles of the state in which it sits.").

Analyzing this case under that framework, which FDB ignores, demonstrates that California's anti-SLAPP rule does not apply. That analysis shows that Federal Rules 8, 12 and 56 control and answer the question in dispute. And because those rules are unquestionably valid and do not exceed statutory authorization or Congress's rulemaking power, it is those rules—and not California's anti-SLAPP rule—that govern this case. That alone is reason enough to deny

---

[1] Because this Court is well acquainted with the key factual allegations here from Ranbaxy's Complaint as well as the briefing on FDB's pending motions to dismiss and transfer venue, familiarity with those facts is assumed and is not repeated here.

FDB's motion. But even if Federal Rules 8, 12 and 56 somehow did not control the issue or were not valid, California's anti-SLAPP rule still would not apply here because California law does not apply to this dispute. Moreover, a Florida court applying California law would not apply California's anti-SLAPP rule in any event because that rule is procedural, not substantive, as it "regulate[s] only the process for enforcing [] rights." *Shady Grove*, 559 U.S. at 407. Either way, FDB's motion should be denied.

I. **CALIFORNIA'S ANTI-SLAPP PROCEDURE IS INAPPLICABLE BECAUSE FEDERAL RULES OF CIVIL PROCEDURE 8, 12 AND 56 CONTROL THE ISSUE AND ARE NOT INVALID.**

California's anti-SLAPP rule is inapplicable here because Federal Rules 8, 12 and 56 answer the question of when, as a matter of federal practice and procedure, a court may dismiss a claim on a preliminary basis based on the pleadings or on matters outside the pleadings. Federal Rules 8, 12 and 56 allow a plaintiff to maintain a lawsuit so long as the plaintiff complies with Rule 8 such that it can survive a Rule 12 motion to dismiss, and so long as the plaintiff adduces sufficient discovery that it can survive a Rule 56 motion for summary judgment. By contrast, California's anti-SLAPP rule prohibits a plaintiff from maintaining a lawsuit unless it can also demonstrate a "probability that the plaintiff will prevail on the claim." Cal. Civ. Proc. Code § 425.16(b)(1).

The Federal Rules also answer the question of what materials a court may consider in deciding whether the plaintiff has a probability of prevailing on its claim. Specifically, Federal Rule 12 prohibits courts from considering matters outside the pleadings (at least not without converting the motion to one for summary judgment). And Federal Rule 56 provides that summary judgment motions may be denied or deferred pending discovery "[i]f a nonmovant

4

shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed .R. Civ. P. 56(d). But California's anti-SLAPP rule allows courts to consider extraneous materials and contains no provision allowing for discovery. To the contrary, the rule stays all discovery upon filing of an anti-SLAPP motion. *See* Cal. Civ. Proc. Code § 425.16(g). Accordingly, Federal Rules 8, 12 and 56 are "sufficiently broad to cause a direct collision with the [anti-SLAPP] state law or, implicitly, to control the issue before the court." *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 4-5 (1987).

In *Shady Grove*, the Supreme Court held that Federal Rule 23 answered the question of whether the plaintiff's suit could be maintained as a class action and therefore controlled the issue before the court notwithstanding a New York rule that precluded class actions seeking the type of damages at issue in that case. 559 U.S. at 398. In so holding, the Supreme Court rejected the argument that the New York rule should apply because it did not directly contradict Federal Rule 23, but rather only added additional requirements. *Id.* at 400. The Supreme Court reasoned that because "Rule 23 permits all class actions that meet its requirements, . . . a State cannot limit that permission by structuring one part of its statute to track Rule 23 and enacting another part that imposes additional requirements." *Id.* at 400-01. The same reasoning applies here. The Federal Rules permit all actions that survive Rule 12 and 56 challenges, and no state can limit that permission by enacting other rules that impose additional requirements. *Id.*

In a recent, well-reasoned opinion, the District Court for the District of Columbia considered whether the District of Columbia's anti-SLAPP statute—which provides a procedure analogous to California's—conflicted with the Federal Rules of Civil Procedure. *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 88 (D.D.C. 2012). Applying the framework set out in *Shady Grove*,

5

the court recognized that the question was "whether [the] court may dismiss [a plaintiff's] claims with prejudice on a preliminary basis based on the pleadings or on matters outside the pleadings merely because [plaintiff] has not 'demonstrate[d] that the claim is likely to succeed on the merits.'" *Id.* at 96. After carefully considering the structure of the federal rules, the court concluded that "Rules 12 and 56 answer the question in dispute" and that the anti-SLAPP statute directly collides with Rules 12 and 56. *Id.* The court correctly observed that "[t]here is no question that the special motion to dismiss under the Anti–SLAPP Act operates greatly to a defendant's benefit by altering the procedure otherwise set forth in Rules 12 and 56 for determining a challenge to the merits of a plaintiff's claim and by setting a higher standard upon the plaintiff to avoid dismissal." *Id.* at 102. Accordingly, the *3M* court held that the anti-SLAPP rule squarely attempts to answer the same question that Rules 12 and 56 cover and, therefore, cannot be applied by a federal court sitting in diversity. *Id.*

This Court should reach the same conclusion as the court in *3M* and deny FDB's motion to strike based on California's anti-SLAPP rule. FDB makes no argument that Rules 12 and 56 were adopted in violation of the Rules Enabling Act, nor could it. And it utterly fails to distinguish *3M* or call into doubt its logic and reasoning. Accordingly, because Rules 12 and 56 control the issue and are valid, California's anti-SLAPP rule does not apply. Numerous other courts have reached this same conclusion and refused to apply state anti-SLAPP provisions in federal court. *Intercon Solutions, Inc. v. Basel Action Network*, No. 12 C 6814, 2013 WL 4552782, at *10-12 (N.D. Ill. Aug. 28, 2013) (following *3M* and holding that Washington's anti-SLAPP motion to strike procedure does not apply in federal court); *1524948 Alberta Ltd. v. Lee*, No. 1:10-CV-02735-RWS, 2011 WL 2899385, at *3 (N.D. Ga. July 15, 2011) (holding that

6

Georgia's anti-SLAPP rule does not apply in federal court); *Nixon v. Haag*, No. 1:08-CV-00648-LJMJMS, 2009 WL 2026343, at *2-3 (S.D. Ind. July 7, 2009) (holding that Indiana's anti-SLAPP rule does not apply in federal court); *Stuborn Ltd. P'ship v. Bernstein*, 245 F. Supp. 2d 312, 316 (D. Mass. 2003).

Without so much as mentioning the framework set out in *Shady Grove*, FDB blithely claims that California's anti-SLAPP rule is a "substantive immunity from suit" and is thus "available" in diversity actions. (FDB Br. at 9.) FDB's conclusory argument ignores a key element of the analysis: whether California's anti-SLAPP rule conflicts with and must therefore yield to Federal Rules of Civil Procedure 12 and 56. As persuasively explained in *3M*, the anti-SLAPP procedure directly conflicts with those federal rules of procedure and cannot be applied in federal court. 842 F. Supp. 2d at 102.

FDB fares no better in its attempt to rely on *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 972 (9th Cir. 1999), as that decision is inconsistent with the Supreme Court's subsequent ruling in *Shady Grove* and, in any event, is not persuasive.[2] There, the Ninth Circuit incorrectly determined that there was "no indication that Rules 8, 12, and 56 were intended to 'occupy the field' with respect to pretrial procedures aimed at weeding out meritless claims." *Id.* But the Supreme Court's decision in *Shady Grove* makes clear that the question is not merely whether the federal rules were intended to "occupy the field;" rather, the Supreme Court held that states may not impose "additional requirements" to maintaining suit in federal court above and beyond those in the Federal Rules. 559 U.S. at 401. Yet that is precisely

---

[2] The second case cited by FDB, *Batzel v. Smith*, 333 F.3d 1018, 1026 (9th Cir. 2003) concerned provisions of the anti-SLAPP rule relating to appellate jurisdiction, which is not at issue here.

what California's anti-SLAPP rule attempts to do when compared with Federal Rules 8, 12 and 56. In any event, it is clear that Federal Rules 12 and 56 do occupy the field. For example, Rule 12(b)(6) states that a defense of failure to state a claim—*i.e.*, that a claim lacks merit—***must*** be asserted in a motion under that rule before a responsive pleading. F.R.C.P. 12(b)(6). And Rule 12(d) requires that a motion under Rule 12(b)(6) "***must*** be treated as one for summary judgment under Rule 56" if the motion presents matters "outside the pleadings" that are "not excluded by the court." Fed. R .Civ. P. 12(d) (emphasis added).

II. **CALIFORNIA'S ANTI-SLAPP RULE IS INAPPLICABLE BECAUSE FLORIDA'S CHOICE-OF-LAW RULES WOULD NOT APPLY IT AND BECAUSE IT IS PROCEDURAL IN ANY EVENT.**

Even if the Federal Rules did not control the issue, this Court still must apply "state substantive law and federal procedural law." *Gasperini*, 518 U.S. at 427-28. The state substantive law that this Court must apply is determined by the forum's choice of law rules, here Florida. *St. Paul Fire & Marine*, 572 F.3d at 895. As set forth below, a choice of law analysis leads to the conclusion that the law of Florida, or maybe New Jersey at best, applies to this dispute, not California law. So there is no basis for applying California law here. But even if California law somehow applies based on a choice of law analysis, FDB has offered no authority suggesting that a Florida court applying California law would or should also apply California's anti-SLAPP rule. Indeed, FDB has not cited a single decision by a non-California court applying California's anti-SLAPP rule. That is not surprising, as the anti-SLAPP rule is plainly procedural.

FDB acknowledges that Florida has adopted the "most significant relationship" test codified in the Restatement (Second) of Conflict of Laws for determining the state law that

applies in tort cases. (Def.'s Br. at 4.) But FDB completely ignores the Restatement provision that is directly applicable to this matter—the principle that applies to "multistate defamation." *See* Restatement (Second) of Conflict of Laws §150. That section provides that "[w]hen a corporation . . . claims that it has been defamed by an aggregate communication, the state of most significant relationship will usually be the state where the corporation . . . had its principal place of business at the time, if the matter complained of was published in that state." *Id.* Here, there is no question that Ranbaxy's trade libel claim is for "multistate defamation" relating to an "aggregate communication."[3] The Complaint alleges that FDB sells its database throughout the United States and Canada. (Compl. ¶ 20.) Accordingly, the state of most significant relationship will be the state in which Ranbaxy has its principal place of business which, as the Complaint alleges, is Florida. And even if, as FDB claims, Ranbaxy's principal place of business is New Jersey, that would only mean that New Jersey law applied to Ranbaxy's claims. In either case, of course, it is clear that California law does ***not*** apply. And nothing in the application of the more generally applicable Restatement section 145 factors, which are neutral, would overturn the application of the default rule.[4]

Moreover, even if California substantive law were somehow to apply, it is well settled that "[i]n applying Florida's choice-of-law rules, procedural matters are governed by Florida

---

[3] Even the sections of the Restatement that FDB cites make clear that what governs is the law of the state in which the publication occurs (here, Florida, among other places), not the state in which the defendant's conduct took place. *See* Restatement (Second) of Conflict of Laws at § 149 cmt. d (noting distinction between place where defendant's act occurs and where publication occurs).

[4] Here, the place where the injury occurred is Florida (or New Jersey if FDB's argument about Ranbaxy's principal place of business is credited), the place where the conduct causing the injury is California, the residence of the parties is Florida for Ranbaxy (or New Jersey if FDB's argument about Ranbaxy's principal place of business is credited) and California for FDB, and there is no relationship between the parties. *See* Restatement (Second) of Conflict of Laws at § 145.

law, even where another forum's substantive law applies." *McMahan v. Toto*, 256 F.3d 1120, 1133 (11th Cir. 2001) *amended on reh'g*, 311 F.3d 1077 (11th Cir. 2002).  FDB offers no authority suggesting that Florida courts would consider California's anti-SLAPP rule to be part of California's substantive law.  To the contrary, all applicable authority supports the conclusion that California's anti-SLAPP statute is plainly procedural.

California's anti-SLAPP rule is codified in the California Code of Civil Procedure and provides a mechanism for early dismissal of claims regardless of the governing substantive law. *See Shady Grove*, 559 U.S. at 407 (procedural rules are those that "govern[] only 'the manner and the means' by which the litigants' rights are 'enforced,'"); *3M*, 842 F. Supp. 2d at 102.  FDB admits as much when it contends that California's anti-SLAPP statute was not part of the "substantive law" in *Schering*—and thus should have been analyzed separately. (*See* FDB Br. at 9.)  In addition, California courts have repeatedly held that California's anti-SLAPP rule is procedural.  *Rusheen v. Cohen*, 128 P.3d 713, 717 (Cal. 2006) (describing the rule as a "procedural remedy"); *Ludwig v. Superior Court*, 43 Cal. Rptr. 2d 350, 360 (Cal. Ct. App. 1995); *see also Vergos v. McNeal*, 53 Cal. Rptr. 3d 647, 651 (Cal. Ct. App. 2007) ("Federal civil rights claims brought in California state courts are subject to section 425.16 motions."); *Brenton v. Metabolife Int'l, Inc.*, 10 Cal. Rptr. 3d 702, 710 (Cal. Ct. App. 2004) ("the anti-SLAPP statute is 'merely . . . a procedural screening mechanism for determining whether a plaintiff can demonstrate sufficient facts . . . to permit the matter to go to a trier of fact.'").

This conclusion should come as no surprise to FDB given its recent experience with a directly analogous case, *Schering Corp. v. First DataBank Inc.*, No. 07-01142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007).  In that case, the Northern District of California denied

FDB's anti-SLAPP motion after determining that a New Jersey court—whose choice of law rules the court was bound to apply—would not apply California's anti-SLAPP rule.[5] *Id.* at *3. After thoroughly analyzing the issue, the court concluded that the relevant factors weighed "strongly against" applying California's anti-SLAPP rule in that action. *Id.* at *8.

The *Schering* court properly rejected FDB's attempt—repeated here—to argue that FDB should receive the protection of the anti-SLAPP rule wherever it might be sued. (Def.'s Br. at 6.) The *Schering* court correctly observed that (as in its motion here) FDB had not "identified any decision applying California's anti-SLAPP statute extra-territorially." *Id.* at *6. Accordingly, the court concluded that FDB "could not have had any expectation that it would have had the benefit of the anti-SLAPP procedure when being sued in New Jersey." *Id.*[6] Further, the court reasoned, "restricting the anti-SLAPP mechanism to courts sitting in California would advance the values of 'uniformity and predictability of result.'" *Id.* The court came to that conclusion even though the parties' had agreed to a forum-selection clause giving California courts exclusive jurisdiction. *See* 2007 WL 1176627, at *8.

As that court also recognized, the cases on which FDB relies to argue that California's anti-SLAPP statute has been applied extraterritorially are entirely inapposite. The *Global Relief* case that FDB relies on heavily (FDB Br. at 8) "did not consider whether the anti-SLAPP statute could apply outside of California, contrary to what First DataBank argues . . . [but] only assumed

---

[5] FDB does not even purport to distinguish the *Schering* case, which it admits involved "facts similar to those here." (FDB Br. at 13 n.3.) Instead, FDB attempts to discredit *Schering* through mischaracterizations. For example, FDB asserts that the court did not apply an "issue-by-issue" analysis and instead focused on the applicable "substantive law." (FDB Br. at 9.) But the *Schering* court expressly applied an "issue-by-issue [approach], with each issue receiving separate analysis." *See Schering*, 2007 WL 1176627, at *4.

[6] Following the *Schering* decision, FDB had even less reason to expect the benefit of the anti-SLAPP procedure in a case, like this, commenced in Florida.

*arguendo* that the anti-SLAPP statute applied and concluded that the complaint would not have been stricken under the statute." *Schering*, 2007 WL 1176627, at *7. The same is true of *Blumenthal v. Drudge*, No. Civ. A. 97-1968PLF, 2001 WL 587860, at *2 (D.D.C. Feb. 13, 2001), which only assumed that the statute could apply before dismissing the defendant's untimely motion.

FDB's other cases likewise are of no use to it. In both *Mero v. U.S. Figure Skating Ass'n*, No. 05-CV-73069, 2006 WL 163529, *6 (E.D. Mich. Jan. 20, 2006) and *Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1159 (N.D. Cal. 2003), the courts concluded that the anti-SLAPP rule did not apply. And FDB misstates the holding of *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138 (2d Cir. 2013). FDB claims that the Second Circuit there held that "the California anti-SLAPP statute applies regardless of whether California law governs the merits of the underlying claim." (Def.'s Br. at 8.) But the Second Circuit actually held only that "California's anti-SLAPP rule would apply ***in a California state court as a procedural matter***, regardless of which state's substantive rule of decision the California court would apply in the action." 718 F.3d at 157. In short, despite having previously lost an anti-SLAPP motion after failing to identify a single case applying the rule extra-territorially, FDB has again failed to cite any such case.

### III. FDB'S ANTI-SLAPP MOTION WOULD FAIL ON THE MERITS EVEN IF THE COURT WERE TO CONSIDER IT.

Even if this Court were to become the first to apply California's anti-SLAPP statute extraterritorially—contrary to well-reasoned and on-point precedent—FDB's motion to strike would still fail on the merits. The *Schering* case, which is indistinguishable from this action in every material respect for purposes of this motion, ruled in the alternative that a motion to strike

12

would be denied on the merits even if the anti-SLAPP rule applied. *Schering*, 2007 WL 1176627, at \*8-10. In that case, FDB relied primarily on the same arguments that it makes here—that Ranbaxy purportedly "cannot prove that the . . . database contained false information." *Id.* at \*10. But in *Schering*, the court declined to "find as a matter of law that" FDB's false statements "do not communicate to a pharmacist that the drugs are therapeutically equivalent and substitutable." *Id.* Rather, the court found that "a reasonable jury might find that First DataBank is communicating false, product-disparaging information." *Id.* For that reason, the court denied the anti-SLAPP motion on the additional ground that it lacked merit. *Id.*

While Ranbaxy's case is stronger than Schering's given the facts and circumstances of Ranbaxy's product, Absorica™, the degree of FDB's misstatements, and FDB's knowledge of and reckless disregard of those misstatements, the two cases are indistinguishable for purposes of analyzing FDB's anti-SLAPP motion. In both cases, the plaintiff distributed a branded pharmaceutical product that the FDA had found was not therapeutically equivalent to any other FDA-approved drug. *See id.* at \*2; (Serino Decl. Ex. A.) Likewise, in both cases, FDB falsely identified the product at issue as "multi-source" and assigned it the same identification number as other drugs, falsely suggesting that the drugs were interchangeable. *Schering*, 2007 WL 1176627, at \*10; (Def.'s MTD Br at 9, 11 [Docket No. 12] (admitting that FDB database identifies Absorica™ as "multi-source" and assigns the same GCN_SEQNO to Absorica™ and other Isotretinoin-based products).) The court in *Schering* correctly held that these facts required denial of FDB's anti-SLAPP motion on trade disparagement and tortious interference claims, and the result should be the same here. *Schering*, 2007 WL 1176627, at \*10.

In a futile attempt to distinguish *Schering*, FDB argues in a footnote that *Schering* "was not applying the proper standard."[7] (FDB Br. at 13 n.3.) This assertion is patently false. In fact, *Schering* applied the exact standard articulated in *Taus v. Loftus*, 151 P.3d 1185, 1204 (Cal. 2007), the very case in which FDB claims the California Supreme Court "clarified" the standard on such motions. Specifically, *Taus* held that a plaintiff facing an anti-SLAPP motion "must demonstrate that the complaint is both legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (citations omitted). The *Schering* court applied the exact same standard: "[P]laintiff must demonstrate that the complaint is legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Schering*, 2007 WL 1176627, at *9.

Nor did *Schering* merely find that the claims in that case had "minimal merit" or were "non-frivolous" as FDB insinuates. (Def.'s Br. at 13, n.3.) Rather, the court found that "a reasonable jury might find that First DataBank is communicating false, product-disparaging information," and that the claims had "***more than*** minimal merit." *Schering*, 2007 WL 1176627, at *9-10 (emphasis added).

Here, Ranbaxy's claims are more than "legally sufficient and supported by a *prima facie* showing of facts to sustain a favorable judgment." *Taus*, 151 P.3d at 1204; *Schering*, 2007 WL 1176627, at *9. The elements of a claim for trade libel are (1) a falsehood (literal or implied),

---

[7] FDB's argument that the denial of a preliminary injunction in the *Schering* case is somehow relevant here warrants no consideration. (FDB Br. at 13 n.3) As demonstrated by the *Schering* decisions themselves, preliminary injunctions are governed by a different and far more stringent standard than anti-SLAPP motions. *See Schering*, 2007 WL 1176627, at *9 (explaining that the preliminary injunction standard required a showing of "strong likelihood of success on the merits," while anti-SLAPP standard requires only a showing that "a 'reasonably jury' ***could*** find in its favor") (emphasis in original).

14

(2) that has been published or communicated to a third person, (3) when defendant-publisher knows or has reason to know that it will likely result in inducing others not to deal with the plaintiff, (4) the falsehood plays a material and substantial part in inducing others not to deal with the plaintiff, and (5) special damages are proximately caused as a result of the published falsehood. *Border Collie Rescue, Inc. v. Ryan,* 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citation omitted).

First, Ranbaxy has made a *prima facie* showing that FDB's statements about the substitutability of other Isotretinoin-based products for Absorica™ are false. FDB admits that its database uses the "the 'Multi-Source/Single Source Indicator' field" to specify "whether a product's clinical formulation . . . is only available from a single labeler or from multiple labelers.'" (Def.'s MTD Br. at 9.) So by designating Absorica™ as a multi-source drug in its database, FDB is telling its subscribers that Absorica™'s clinical formulation is available from multiple sources/labelers. (*See id.*) But as the product insert demonstrates, Absorica™'s clinical formulation is materially different from other Isotretinoin-based products. (Serino Decl. Ex. B at 8.) And the FDA-approved prescribing insert states that Absorica™ is neither "interchangeable" with Accutane® (another branded product) or its generic equivalents nor "substitutable" with any other Isotretinoin-based product. (*Id.* at 1, 8.) FDB's contrary representation is therefore false. Likewise, FDB represents that products with the same GCN_SEQNO share the same "[1] ingredient(s), [2] strength, [3] dosage form, and [4] route of administration for a drug formulation." (Def.'s MTD Br. at 6.) But Absorica™ contains unique ingredients designed to allow the drug to remain effective even when taken without food, which is not the case for other Isotretinoin-based products. (Serino Decl. Ex. B at 8.)

15

Second, there can be no dispute that FDB's representations have been published or communicated to a third person, nor that FDB knows that it will likely cause, and has caused, pharmacists to improperly substitute other Isotretinoin-based products for Absorica™. (*See* Serino Decl. Ex. C.)

Third, FDB's false statements play a material and substantial part in inducing others not to deal with Ranbaxy. FDB touts itself as "a recognized leader in med[ication] decision support" and claims that its database "plays an essential role" in that process—that is, the decision whether to substitute one product for another. (Serino Decl. Ex. D.) So it is reasonable to infer that pharmacists rely on FDB's statements about Absorica™ and that, by virtue of the fact that those statements are false, misleading and incomplete, pharmacists have been deceived or misled into believing, incorrectly, that Absorica™ is freely interchangeable and substitutable with other Isotretinoin-based products. (*Id.*) Indeed, that is just what Ranbaxy has been told. (*See*, *e.g.*, Compl. ¶¶ 27-29.) Thus, pharmacists routinely fill Absorica™ prescriptions with competing Isotretinoin-based products—when they cannot or should not—because they mistakenly believe that they are required or permitted to fill Absorica™ prescriptions with a generic Isotretinoin-based product. (*Id.*)

Fourth, and finally, this improper pharmacy-level substitution of generic Isotretinoin-based products for prescriptions written for Absorica™ has caused Ranbaxy to lose sales and market share. (*Id.* ¶ 30.)

FDB's remaining arguments for dismissal—which simply parrot the meritless arguments in its motion to dismiss—likewise fail. The qualified privileges afforded under the "fair report" and "opinion" doctrines are affirmative defenses on which FDB bears the burden of proof at all

16

times, including on an anti-SLAPP motion. *See Seltzer v. Barnes*, 106 Cal. Rptr. 3d 290, 303 (Cal. Ct. App. 2010); *Premier Med. Mgmt. Sys., Inc. v. California Ins. Guarantee Ass'n*, 39 Cal. Rptr. 3d 43, 53 (Cal. Ct. App. 2006). FDB has made no evidentiary showing to carry its burden and, in any event, these defenses fail for the reasons explained in Ranbaxy's opposition to FDB's motion to dismiss. (*See* Ranbaxy Opp. to Mot. to Dismiss at 27-29 [Docket No. 33].) Accordingly, FDB's anti-SLAPP motion—which purports to employ a procedure that is simply not available in this Court—is meritless in any event and should be denied.[8]

## CONCLUSION

For the foregoing reasons, FDB's anti-SLAPP motion should be denied.

Dated: October 3, 2013

                BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
                Professional Association

                /s/ Michael E. Lockamy
                John A. DeVault, III
                Florida Bar No. 103979
                E-mail: jad@bedellfirm.com
                Michael E. Lockamy
                Florida Bar No. 69626
                E-mail: mel@bedellfirm.com
                The Bedell Building
                101 East Adams Street
                Jacksonville, Florida 32202
                Telephone: (904) 353-0211
                Facsimile: (904) 353-9307

---

[8] To the extent that the Court (1) reaches the merits—which it should not for the reasons discussed in sections I and II—and (2) believes that Ranbaxy must support each of the allegations in its complaint with admissible evidence, Ranbaxy respectfully requests that the Court stay its consideration of this motion and allow Ranbaxy a reasonable period of discovery. No discovery has occurred in this case. And all of the pharmacists and other subscribers whose substitution decisions are being affected are third parties from which Ranbaxy cannot compel documents or testimony. *See* Fed. R. Civ. P. 56(d) (allowing for a period of discovery to oppose summary judgment motion where facts are unavailable to the nonmovant). Moreover, Ranbaxy had only 17 days to prepare its response to this motion, along with responses to FDB's motion to dismiss and motion to transfer venue.

Jay P. Lefkowitz, P.C.
jlefkowitz@kirkland.com
Joseph Serino, Jr., P.C.
jserino@kirkland.com
Matthew F. Dexter
mdexter@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Facsimile:   (212) 446-4900

Michael D. Shumsky
mshumsky@kirkland.com
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C.  20005
Telephone: (202) 879-5000
Facsimile:  (202) 879-5200

*All admitted pro hac vice*

*Counsel for Plaintiff Ranbaxy Laboratories Inc.*

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on October 3, 2013, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

                                              /s/ Michael E. Lockamy
                                                            Attorney