**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RANBAXY LABORATORIES, INC.,

Plaintiff,

vs. Case No. 3:13-cv-859-J-32MCR

FIRST DATABANK, INC.,

Defendant.

---

**ORDER**

This case is before the Court on Defendant's Motion to Dismiss (Doc. 12), Special Motion to Strike Pursuant to Section 425.16 of the California Civil Procedure Code (Doc. 25), and Motion to Transfer (Doc. 26), as well as Plaintiff's responses (Doc. 33, 37, 38). The parties also submitted supplemental filings in light of Louis Vuitton Malletier, S.A. v. Mosseri, 736 F.3d 1339 (11th Cir. 2013). (Doc. 56, Doc. 57). The Court heard oral argument on the motions on January 31, 2014, and the transcript of that hearing (Doc. 59) is incorporated by reference.

**I. Background**[1]

Ranbaxy Laboratories, Inc. sells and distributes branded prescription pharmaceutical products. (Doc. 1 at 1-2). This case is about its new drug, Absorica, an Isotretinoin-based acne medicine. (Doc. 1 at 3). Absorica is unique amongst Isotretinoin-based acne

---

[1] For purposes of a motion to dismiss, the Court takes all well-pleaded allegations in the Complaint as true and draws all reasonable inferences in favor of Plaintiff. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006).

medications, the rest of which must be taken with high-fat meals to be effective. (Doc. 1 at 3).

First Databank, Inc. ("FDB") provides drug information to the pharmacy industry, including through an electronic database which describes the clinical characteristics of various pharmaceutical products. (Doc. 1 at 2). In FDB's database, Absorica is listed with an Orange Book Code rating of "BX" and a Therapeutic Equivalence Indicator (GTI) of 1, each of which indicate that the drug is not therapeutically equivalent to any other drug. (Doc. 14 at 5). Drugs are considered therapeutically equivalent if they can be safely substituted while producing the same clinical effect. (Doc. 1 at 5). However, FDB's database also provides Absorica with the same Clinical Formulation ID as other acne medications, and lists the drug as multi-source. (Doc. 12 at 9). The single or multi-source designation reflects whether more than one product exists for that given Clinical Formulation ID. (Doc. 12 at 9). Drugs with the same Clinical Formulation ID have the same ingredients, strength, dosage form, and route of administration. (Doc. 12 at 9).

Ranbaxy alleges that FDB's listing is false, since Absorica should not have the same Clinical Formulation ID as other Isotretinoin-based drugs and should be listed as a single-source drug, not a multi-source drug. (Doc. 1 at 6). Ranbaxy alleges that, as a result of the false listing, pharmacists have substituted other drugs where they would have instead provided Absorica if FDB properly listed the drug. (Doc. 1 at 7).

At issue in this case are the alleged loss of sales and market share for Ranbaxy resulting from FDB's listing. (Doc. 1 at 8). The parties apparently went back and forth in trying to resolve this dispute amicably. (Doc. 1 at 9-10). Unable to come to an agreement,

Ranbaxy brought this suit for trade libel and tortious interference with business relations. (Doc. 1).

## II. Motion to Dismiss

Defendant's Motion to Dismiss argues that this case should be dismissed for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted. (Doc. 12 at 1). This Court turns first to issues of personal jurisdiction. See Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 (11th Cir. 1999).

### A. Personal Jurisdiction

Personal jurisdiction over Defendant must satisfy both the Florida long-arm statute and Fourteenth Amendment due process requirements. PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 807 (11th Cir. 2010); Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). Plaintiff makes arguments for both general and specific jurisdiction under Florida's long-arm statute. (Doc. 33 at 7-12). Defendant asserts that its due process rights prevent this Court from exercising jurisdiction over it.[2]

Specific personal jurisdiction due process analysis involves two stages. First, the plaintiff has the burden of proving both that his claims arise out of at least one of the defendant's contacts with the forum and that the defendant purposefully availed himself of the privilege of the forum state's laws. Louis Vuitton, 736 F.3d at 1355. If the plaintiff

---

[2] Defendant does not contest the applicability of the Florida long-arm statute on specific jurisdiction. (Doc. 12 at 14-16). Therefore, this Court need only address the due process considerations.

succeeds in the first stage, the defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. Id.

Ranbaxy's claims for tortious interference and trade libel revolve around FDB's publication of allegedly false information about Absorica to pharmacies across the country, including in Florida. (Doc. 1 at 10-13). Therefore, Plaintiff's claims arise out of Defendant's contacts with the forum.

With respect to purposeful availment, both parties initially pointed the Court to the Calder effects test. (Doc. 12 at 15; Doc. 33 at 13-15).[3] Subsequent to the parties' filings, however, the Eleventh Circuit clarified that the Calder effects test is an additional way for plaintiffs to establish jurisdiction, rather than a requirement in every intentional torts case. Louis Vuitton, 736 F.3d at 1357. The more traditional minimum contacts test for purposeful availment is still available in intentional torts cases, and, where that test provides jurisdiction, the Calder effects test is unnecessary. Id.

In Louis Vuitton, the Eleventh Circuit found purposeful availment where the defendant maintained a website that was accessible in Florida and sold and distributed trademark-infringing goods to Florida customers through that website. Id. at 1357-58. Here, FDB is registered to do business in Florida, markets its products extensively in the state, and provides services to subscribers in Florida, generating substantial revenue for the company.

---

[3] The Calder effects test applies in cases of intentional torts, such as this one. Oldfield v. Pueblo De Bahia Lora, S.A., 558 F.3d 1210, 1220, n.28 (11th Cir. 2009). The test requires that the defendant committed an intentional tort directly aimed at the forum state, which caused an injury within the forum that the defendant should have reasonably anticipated. Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1323-24 (M.D. Fla. 2010). An act is directly aimed at a forum state where it is directed at a forum resident. Id. at 1324.

(Doc. 1 at 2). FDB has purposefully availed itself of the privileges of doing business in Florida.

Since Plaintiff has demonstrated that its claims arise out of Defendant's contacts with the forum, and that Defendant has purposefully availed itself of Florida's laws, the burden shifts to Defendant to show that exercising jurisdiction over it would contradict traditional notions of fair play and substantial justice. This analysis focuses on "the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." Licciardello v. Lovelady, 544 F.3d 1280, 1284 (11th Cir. 2008).

Here, FDB alleges an unnecessary and undue burden in traveling from California to Florida, a lack of convenience to Ranbaxy, and a complete absence of any special interest in adjudicating the case in this forum. (Doc. 56 at 5). A bald claim of unnecessary burden is not sufficient to convince the Court that a large corporation, with customers across the country and in Canada, is truly burdened by litigating in Florida. This is especially true in light of modern modes of transportation and communication, as well as the fact that FDB does persistent business in Florida. Moreover, Florida has a significant interest in preventing alleged misstatements that hurt a pharmaceutical business whose distribution center is located in Florida. FDB has not shown that exercising jurisdiction over it would violate traditional notions of fair play and substantial justice.

As this Court therefore has specific personal jurisdiction over Defendant, there is no need to analyze the general jurisdiction question. Further, since Ranbaxy has established personal jurisdiction, venue can be based on FDB's presence in the state. 28 U.S.C. §

1391(b)(1) (2012).

### B. Failure to State a Claim

Defendant asserts that California or New Jersey law is appropriate in settling this dispute. (Doc. 12 at 16, n.7). However, there is no need to engage in choice of law analysis where the laws of the different states are the same. Tune v. Philip Morris Inc., 766 So. 2d 350, 352 (Fla. Dist. Ct. App. 2000). Defendant does not cite to any conflict between California or New Jersey law and Florida law with respect to these causes of action. (Doc. 12 at 16, n.7). Plaintiff asserts that there is no conflict. (Doc. 33 at 6). Therefore, at least at this stage in the litigation, there is no need to perform a comprehensive choice of law analysis, and Florida law can be applied.

#### I. Trade Libel

Defendant asserts that Plaintiff fails to state a valid claim for trade libel. (Doc. 12 at 17-33).

> "To state a valid claim of trade libel, plaintiffs must allege: (1) a falsehood; (2) has been published, or communicated to a third person; (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood."
>
> Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006).

Defendant's primary argument is that Plaintiff has not plausibly alleged any false statement. (Doc. 12 at 18-28). Plaintiff alleges two false statements: FDB's listing of Absorica as a multi-source drug and its listing of Absorica under the same Clinical

Formulation ID number as other Isotretinoin-based products, each of which Ranbaxy asserts is an indication that Absorica is therapeutically equivalent to other acne drugs. (Doc. 33 at 16-17).

FDB points towards three important documents in attempting to demonstrate that Ranbaxy's claims are not plausible: the FDA's Orange Book, the information FDB published about Absorica, and FDB's user documentation for its database. (Doc. 12 at 5, n.1). Courts generally may not consider anything beyond the complaint and its attached documents in ruling on a motion to dismiss. Fin. Sec. Assur., Inc. v. Stephens, Inc., 500 F.3d 1276, 1284 (11th Cir. 2007). However, the Court may consider additional documents where Plaintiff refers to the document in the complaint, the document is central to Plaintiff's claim, the authenticity of the document is not in dispute, and Defendant attaches the document to the motion to dismiss. Id. Defendant must, however, attach the entirety of the document, not just excerpts. See Horsley v. Feldt, 304 F.3d 1125, 1135 (11th Cir. 2002).

Here, FDB is asking the Court to consider too much outside the four corners of the complaint at this stage in the litigation. For example, FDB has attached eleven pages from its database's user documentation, which is well over three thousand pages in full. (Doc. 14 at 7-17). It is possible that these are the only relevant pages to interpreting the meaning of the terms at issue. However, on a motion to dismiss, especially considering that opposing counsel have not yet had access to the entire documentation, the Court cannot consider just excerpts from the documentation.[4] Moreover, as there is no clear definition of "multi-source"

---

[4] FDB may wish to file portions of the documentation under seal. (Doc. 12 at 9, n. 4). If so, it should file a motion to do so in accordance with Local Rule 1.09.

and "Clinical Formulation ID number" properly before the Court, the parties' factual disputes are not appropriately resolved on a motion to dismiss.[5]

Thus, FDB's arguments for implausibility fail. Ranbaxy's complaint adequately alleges falsity. (Doc. 1 at 6). It also adequately alleges malice and causation. (Doc. 1 at 8-9).

In addition to arguments based on implausibility, FDB asserts the applicability of the fair report privilege. (Doc. 12 at 28). FDB argues that it can not be liable because its database simply conveys the same information contained in the Orange Book. (Doc. 12 at 28). The complaint, on the other hand, alleges that FDB itself is making statements that are false, misleading and incomplete. (Doc. 1 at 8). This Court can consider the information FDB has published about Absorica since that information is central to the complaint and its authenticity is not in dispute. However, it is not clear from the face of the published materials that FDB is simply reporting the Orange Book information. As a result, taking the allegations in the complaint as true, dismissal on account of the fair report privilege is not appropriate.[6]

**ii. Tortious Interference with Business Relations**

FDB's arguments on this count regarding falsity, actual malice, and causation all overlap with its arguments against the trade libel count, and therefore fail for the same reasons. FDB's only remaining argument is that Ranbaxy failed to plausibly allege that

---

[5] FDB also asserts that its statements cannot be false because they are opinions, rather than objectively verifiable facts. (Doc. 12 at 29-31). However, it is not apparent at this stage whether its statements are, in fact, opinions.

[6] In its filings, FDB also argued that Ranbaxy failed to adequately plead special damages. (Doc. 12 at 31-33). At the hearing, however, FDB did not bring up that argument. Regardless, Ranbaxy adequately pled special damages. See Italiano v. Jones Chemicals, Inc., 908 F. Supp. 904, 907 (M.D. Fla. 1995).

FDB's publication was an intentional and unjustified interference with Ranbaxy's relationship with a number of pharmacies. (Doc. 12 at 34); see Tamiami Trail Tours, Inc. v. Cotton, 463 So. 2d 1126, 1127 (Fla. 1985). FDB asserts that Ranbaxy cannot meet this element since it cannot demonstrate that FDB had a motive to inflict injury. (Doc. 12 at 34). However, tortious interference requires an intentional and unjustified interference, not a particular motive. Tamiami Trail Tours, 463 So. 2d at 1128; McCurdy v. Collis, 508 So. 2d 380, 383 (Fla. Dist. Ct. App. 1987). By stating that FDB knowingly made false representations that it knew would cause pharmacists to substitute other Isotretinoin-based drugs for Absorica, Ranbaxy has adequately alleged intentional and unjustified interference. (Doc. 1 at 8-9).

**III. Motion to Strike**

Defendant's Special Motion to Strike Pursuant to Section 425.16 of the California Civil Procedure Code argues that Plaintiff's Complaint should be struck under California's anti-SLAPP statute. (Doc. 25). A "SLAPP" is a lawsuit "brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances." Cal. Civ. Proc. Code § 425.16(a) (West 2013). California law provides an additional means through which defendants can seek to strike a complaint perceived to be a SLAPP. § 425.16. When a case against a person arises from that person's act in furtherance of their free speech rights, the case is subject to a motion to strike unless the plaintiff demonstrates a probability of success on the merits based on the pleadings and any affidavits filed. Id. There is a genuine conflict of law here, since neither New Jersey nor Florida has such an anti-SLAPP statute. Therefore, a choice of law analysis is necessary.

There is disagreement over whether anti-SLAPP statutes should be applied in federal

court in diversity cases. Compare Makaeff v. Trump Univ., LLC, 736 F.3d 1180, 1182 (9th Cir. 2013) (Wardlaw, J. and Callahan, J. concurring) with 3M Co. v. Boulter, 842 F. Supp. 2d 85, 104 (D.D.C. 2012).[7] However, there is no need to resolve that question in this case, since, even if the California anti-SLAPP statute is available in federal diversity cases, Florida choice of law provisions would not apply the California anti-SLAPP statute.

A federal court with diversity jurisdiction applies the choice of law provisions of the forum state, in this case, Florida. Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). In tortious interference or trade libel cases, the closest choice of law provision, and therefore the applicable provision, is that relating to defamation and injurious falsehoods. See Lanchile Airlines v. Connecticut Gen. Life Ins. Co. of N. Am., 731 F. Supp. 477, 479 (S.D. Fla. 1990). As in most torts cases, the state's law to apply in multistate defamation cases is the state with the most significant relationship to the case. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(1) (1971). Usually this is where the plaintiff corporation has its principal place of business, so long as the complained of publication occurred in that state. § 150(3).

However, there are seven factors in determining the state of most significant relationship: "(1) the needs of the interstate and international systems; (2) the relevant policies of the forum; (3) the relevant policies of other interested states and the relative

---

[7] The anti-SLAPP statute is only applicable in federal court if it does not conflict with the Federal Rules of Civil Procedure. See 3M Co., 842 F.Supp.2d at 104. Further, it must be a part of state substantive law, not state procedural law. See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427, 116 S. Ct. 2211, 2219, 135 L. Ed. 2d 659 (1996). For purposes of analysis, the Court assumes both of these things to be true.

interests of those states in the determination of the particular issue; (4) the protection of justified expectations; (5) the basic policies underlying the particular field of law; (6) certainty, predictability and uniformity of result; and (7) ease in the determination and application of the law to be applied." Plath v. Malebranche, 351 F. Supp. 2d 1338, 1341 (M.D. Fla. 2005) (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6 (1971)). In considering these factors, four contacts need to be considered: the place where the injury occurred, the place where the conduct causing the injury occurred, the residence, place of incorporation, and place of business of the parties, and the place where the parties' relationship exists. Grupo Televisa, 485 F.3d at 1240.

The parties cannot agree about the location of Ranbaxy's principal place of business. The Complaint alleges that Ranbaxy's principal place of business is in Jacksonville, Florida. (Doc. 1 at 1). However, Defendant contends that Ranbaxy is located in New Jersey. (Doc. 12 at 2). The Court will assume arguendo that Defendant is correct that Ranbaxy's principal place of business is New Jersey.

The parties agree, however, that FDB's principal place of business is in California (Doc. 1 at 2), that the conduct causing the injury in this case occurred in California (Doc. 38 at 9, n. 4), and that the parties have no relationship (Doc. 38 at 9, n.4).

FDB makes two arguments for the application of California's anti-SLAPP statute. First, it argues that the place where the conduct occurred, here California, should be given extra weight in a choice of law analysis where the primary purpose of the underlying tort rule is to punish misconduct. (Doc. 25 at 5-6). This principle, taken from the Restatement, has been applied by two different district courts in determining the choice of law regarding

punitive damages, where by definition the purpose of the rule is to punish the defendant. See Dopson-Troutt v. Novartis Pharm. Corp., 8:06-CV-1708-T-24, 2013 WL 3808205, at *3 (M.D. Fla. July 22, 2013); Krause v. Novartis Pharm. Corp., 926 F. Supp. 2d 1306, 1311 (N.D. Fla. 2013). However, FDB provides no reason to believe that the primary purpose of a trade libel prohibition is to punish the defendant. (See Doc. 25 at 5-6). Indeed, the Restatement even provides that, in multi-state defamation cases, it is the principal place of business of the plaintiff, not the place where the conduct occurred, that should receive extra weight. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(3) (1971).

FDB's second argument is that California has a considerable interest in protecting the speech rights of its residents, which should therefore lead to the application of the California anti-SLAPP law. (Doc. 25 at 7-9). California does have a strong interest in providing its residents with protections against frivolous lawsuits aimed to freeze the exercise of free speech. However, New Jersey likewise has a strong interest in preventing its companies from being the subject of libelous statements, and part of that prevention includes enabling any aggrieved company which can plausibly state a claim to engage in discovery before being subject to a ruling on the merits.[8]

FDB has not shown why this is the unusual trade libel case where the state of most significant relationship is not the state of the plaintiff's principal place of business. Applying

[8] In contrast, under California's anti-SLAPP law, discovery is stayed until the Court rules on the anti-SLAPP motion. Cal. Civ. Proc. Code § 425.16(g) (West 2013). Thus, where, as here, the anti-SLAPP motion was filed before commencement of discovery, a plaintiff can only perform discovery if it survives the anti-SLAPP motion or demonstrates good cause sufficient to convince the court to enter an order permitting specific discovery before a ruling on the anti-SLAPP motion. Id.

Florida choice of law principles, the applicable substantive law for purposes of the anti-SLAPP statute is the state of Ranbaxy's principal place of business, where the loss of sales and market share was most felt.

Decisions from other courts faced with the question of whether to apply an out-of-state anti-SLAPP statute support this holding. For example, in a strikingly similar case where a New Jersey corporation was suing FDB, a court refused to apply California's anti-SLAPP statute under New Jersey choice of law rules. Schering Corp. v. First DataBank Inc., C 07-01142 WHA, 2007 WL 1176627 (N.D. Cal. Apr. 20, 2007). In so doing, the court emphasized that New Jersey had a strong interest in using summary judgment, rather than an anti-SLAPP procedure, to dismiss groundless actions. Id. at *6. Likewise, a court applying New York choice of law provisions refused to enforce a D.C. anti-SLAPP law in a case where the defendant was domiciled in D.C. Adelson v. Harris, 12 CIV. 6052 JPO, 2013 WL 5420973, at *7-9 (S.D.N.Y. Sept. 30, 2013). Instead, the court applied Nevada's anti-SLAPP law, since the plaintiff was a citizen of Nevada, which gave Nevada a significant and incontrovertible interest in protecting him from defamatory statements. Id. at *6. FDB points to only one other case in which a federal court applied an out-of-state anti-SLAPP provision, which is inapposite. In that case, there was no need for a choice of law determination, since the parties agreed that California law applied. USANA Health Sciences, Inc. v. Minkow, 2:07-CV-159 TC, 2008 WL 619287, at *3, n.5 (D. Utah Mar. 4, 2008).

**IV. Motion to Transfer**

FDB alternatively asks for the case to be transferred to the Northern District of California as a more convenient forum. (Doc. 26). For the convenience of the parties and

witnesses, a case may be transferred to any district where it might have been brought. 28 U.S.C. § 1404 (West 2010). Factors to be considered in determining whether to transfer a case are: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interest of justice, based on the totality of the circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005). The moving party bears the burden of demonstrating that the plaintiff's choice of forum is clearly outweighed by the other considerations. S.E.C. v. Lauer, 478 F. App'x 550, 554 (11th Cir. 2012). Upon consideration of each of the relevant factors, FDB has not met its burden.

Accordingly, it is hereby

**ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 12) is **DENIED**. The Court emphasizes that this ruling simply sustains the complaint and offers no view as to how the Court might rule in later phases of the case.
2. Defendant's Special Motion to Strike (Doc. 25) is **DENIED**.
3. Defendant's Motion to Transfer (Doc. 26) is **DENIED**.
4. No later than **April 10, 2014**, FDB should file its answer.
5. As discussed on the record at the hearing, the parties are to commence

limited discovery, pertaining only to the issue of falsity. The parties have until **June 11, 2014** to perform that discovery. Defendant has until **July 11, 2014** to file a motion for summary judgment as to falsity. Plaintiff has until **August 11, 2014** to file a response. The Court will then determine how to proceed.

**DONE AND ORDERED** at Jacksonville, Florida this 12th day of March, 2014.

TIMOTHY J. CORRIGAN
United States District Judge

w.
Copies:

counsel of record